CLARENCE F. WEISMANN *vs.* HARRY SNYDER & another.[1]

Suffolk.    January 6, 1959. — February 4, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Equity Pleading and Practice,* Rehearing, Findings by judge, Requests and rulings.

Upon appeal from a final decree in a suit in equity in which the evidence was reported and the trial judge reported his subsidiary findings and conclusions which he stated he reached "as matter of law" thereon, but made no ultimate findings of fact decisive of the case, it was remanded to the trial judge to make such ultimate findings and to enter a final decree appropriate thereto.

BILL IN EQUITY, filed in the Superior Court on August 8, 1957.

The suit was heard by *Lurie,* J.

*Benjamin Goldman,* (*Joseph Krinsky* with him,) for the plaintiff.

*George W. McLaughlin,* for the defendant Snyder.

CUTTER, J.    This bill in equity seeks a decree declaring the rights, if any, of a Massachusetts corporation, Jones, Weismann & Co., Inc. (hereinafter called the corporation), in a commission received by the defendant Snyder upon the sale of certain assets of C. Pappas Company, Inc. (hereinafter called Pappas Company), to Springfield Sugar & Products Company (hereinafter called Products Company). On September 3, 1954, prior to the filing of this bill, the assets of the corporation were assigned to the plaintiff, Weismann, and to Snyder as trustees under a trust or liquidation agreement for the benefit of the corporation's creditors and stockholders.

The trial judge made findings and rulings and a report of material facts.    The final decree declared that neither the

---

[1] Jones, Weismann & Co., Inc.

corporation nor the trustees under the trust agreement had any rights against Snyder, in respect of the transaction between Pappas Company and Products Company or otherwise, and that Snyder is not liable to the corporation or to Weismann. Weismann has appealed. The evidence is reported.

The trial judge found the following facts among others. Weismann owned one half the corporation's outstanding shares. Snyder's wife owned the remaining shares. Snyder was president and manager of the corporation, the business of which "consisted of acting as brokers for food manufacturers and canners in the selling of their products to wholesale grocers and jobbers." Weismann was its treasurer. Both Snyder and Weismann acted as salesmen. They and the corporation, on September 3, 1954, entered into the liquidation agreement already mentioned.

"Less than one per cent of the corporate business consisted of acting as brokers in disposing of . . . items between wholesale grocers and jobbers." Weismann had engaged for eighteen years in the food brokerage business before joining with Snyder in the corporation. "At no time had Weismann . . ., nor had the corporation, ever been involved in acting as a broker in the sale or liquidation of a going food business . . . [or] sold a complete inventory" or taken "part in any sale of food products that required the services of attorneys for the drafting of a document as to that sale." Such transactions were "completely outside the common course of the business of" the corporation.

In September, 1951, Snyder learned while making a business call on Pappas Company, a customer of the corporation, that Pappas Company "desired to sell their branch . . . in Springfield . . . and to discontinue their business in that city." As a result of Snyder's efforts, Pappas Company entered into an agreement with Products Company, also a customer of the corporation, for the sale of Pappas Company's grocery inventory, for furnishing to the buyer of a list of names of grocery accounts, for an agreement to suspend operations of the grocery department, and for a cove-

nant by Pappas Company not to engage in the grocery
business or to maintain a warehouse in the Springfield area.
Snyder received for his services as broker and arbitrator
$5,500, the final payment to Snyder being in June, 1956.

"There was no evidence of any agreement by Snyder with
either the corporation or Weismann that required Snyder
to devote all of his time to . . . the corporation." The
corporation doubled its volume during the activities of Sny-
der and Weismann, who regarded Snyder as a competent
salesman. He had known that Snyder, while with the cor-
poration, had for a time participated in the activities of a
warehouse. "Snyder had told Weismann of the oppor-
tunity presented to him in the desire of" Pappas Company
to dispose of its Springfield branch.

On the facts so found by him, the judge ruled "as matter
of law that there was no wrongful preëmption by Snyder
of any true corporate opportunity belonging to the corpora-
tion . . . that Snyder took no advantage of any corporate
needs . . . that there was no unfair interference by Snyder
or any competition by him with the corporation . . . that
the opportunity . . . was outside the scope of the actual
corporate business and that Snyder was free to act as an
individual."

1. So far as they go, the findings, as opposed to the rulings
of law, made by the trial judge were justified by the evidence.
These findings certainly are not plainly wrong and are based
to a great extent upon oral testimony.

2. This court has frequently stated the principles govern-
ing the fiduciary obligation of a corporate officer or employee
to protect the corporation in realizing business opportunities
reasonably within the scope of the corporate enterprise.
*Durfee* v. *Durfee & Canning, Inc.* 323 Mass. 187, 199. *Pro-
duction Mach. Co.* v. *Howe,* 327 Mass. 372, 377–378.
*Black* v. *Parker Mfg. Co.* 329 Mass. 105, 111–113. *Guth* v.
*Loft, Inc.* 23 Del. Ch. 255, 270–273. Cf. *Lincoln Stores,
Inc.* v. *Grant,* 309 Mass. 417, 421, 423. Cf. also *Essex Trust
Co.* v. *Enwright,* 214 Mass. 507, 509–514; *Horn Pond Ice
Co.* v. *Pearson,* 267 Mass. 256, 261; *Seder* v. *Gibbs,* 333

Mass. 445, 452–453; note, 55 Harv. L. Rev. 866. As Dolan, J., said, in the *Durfee* case at p. 199, "the true basis of the governing doctrine rests fundamentally on the unfairness in . . . particular circumstances of a director . . . 'taking advantage of an opportunity [for his personal profit] when the interests of the corporation justly call for protection. This calls for the application of ethical standards of what is fair and equitable . . . [in] particular sets of facts.'" The problem is essentially one of fact, or of mixed law and fact, and of applying a general standard to particular circumstances, frequently reasonably susceptible of more than one interpretation.

3. The trial judge in effect stated, when he made the rulings "as matter of law" already mentioned, that his subsidiary findings legally required the conclusions which he reached. In an appropriate case it is open to us to disregard the form of conclusions which a judge has stated as rulings of law and to treat them as intended as ultimate findings of fact. Cf. *Commercial Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.* 276 Mass. 335, 338. Here in view of the judge's repeated statements that he was making rulings, it is fair to take his statement at face value.

Upon the evidence the judge could have found in addition to facts found by him (a) that the corporate charter powers were broad enough to include sales activity of the type and on the scale undertaken in connection with the sale of Pappas Company's Springfield inventory and business; (b) that, although Snyder told Weismann about the opportunity, Weismann could reasonably have thought that Snyder was undertaking this bigger and unusual commission service as a corporate activity; (c) that Snyder used corporate time and perhaps minor corporation expense moneys to further this work; (d) that the sale of this large inventory may have reduced the corporation's chance of selling food items to Products Company, the purchaser, in the ordinary course of business; (e) that Snyder did not keep Weismann adequately and currently informed by full disclosure of the progress and details of the Pappas Company transaction;

and (f) that the opportunity came in the first place only because of Snyder's connection with the corporation. The judge, equally reasonably on the evidence, could have made subsidiary findings inconsistent with those suggested above, drawing inferences from the evidence favorable to Snyder's contention. Much depended on the judge's appraisal of the practical importance of each of these matters and what he found to be the actual understanding of the two principals about the time to be devoted to the corporation, the extent of their permissible participation in outside activities, and the type of operations to be undertaken by the corporation (which might well be much more limited than the full range of its expressed and implied charter powers).

The parties are entitled to have the trial judge (who heard the oral testimony and thus is in far better position to appraise it than we are on the printed record) make ultimate conclusions of fact decisive of the case. This he should do free from any misapprehension that he is compelled to reach particular conclusions as a matter of law. The case must be remanded to the trial judge to make such ultimate findings. An appropriate decree is to be entered in the light of those findings. On the present record we see no basis in any event for charging Snyder with more than the amount which he actually received from Pappas Company, after bringing suit for his commission. Unless the judge in his discretion desires to take further evidence, we perceive no occasion for further hearings.

The final decree is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*