ANDERSON CORPORATION *vs.* S. MALCOLM BLANCH
& others.

Worcester. September 22, 1959. — December 9, 1959.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Contract,* Of employment, Performance and breach. *Corporation,* Officers and agents. *Damages,* For breach of contract. *Agency,* Agent's compensation. *Unlawful Interference. Trade Secret. Equity Pleading and Practice,* Master: exceptions to report, summary of evidence, objections to report, findings; Decree.

Exceptions to a master's report seeking to raise the question of the sufficiency of the evidence to support findings made by him were ineffective in the absence of a report of the evidence or proper summaries thereof under Rule 90 of the Superior Court (1954). [49]

Purported summaries of evidence by a master in connection with objections to his report seeking to raise the question of the sufficiency of evidence to support findings made by him were improper for want of compliance with Rule 90 of the Superior Court (1954) in that there had been no "stenographer selected or approved by the master before any evidence was introduced" and no "written request presented with the objection[s]." [49]

It was irregular for a master, instead of physically appending to his report written objections brought in by the parties, to copy the objec-

tions at the end of his report, interspersing the copied objections with purported summaries of evidence. [50]

Where a managing officer and director of a corporation, after having had to sell his half interest in its stock through exercise of an option given by him, lost interest and engaged in a course of conduct not compatible with the best interests of the corporation and constituting a breach of his contract of employment by it for some months until he was discharged, although he performed valuable services during that period, the corporation in the circumstances was entitled to recover from him, not the full salary paid him in that period, but only the difference between such salary and a smaller sum representing the value of his services; also the amount of damage suffered by the corporation through his breach of contract; and also the amount of expense to the corporation for unnecessary material purchased in its behalf by him in bad faith with intent to injure it, provided such material were delivered to him upon his payment of the expense. [50–52]

Where a conclusion of a master is not based solely on the subsidiary findings included in his report and the evidence is not reported, the conclusion is binding on the trial judge and on this court unless the subsidiary findings demonstrate that the conclusion is unsound. [51–52]

Findings by a master in a suit in equity by a corporation against another corporation did not support a claim by the plaintiff based on alleged performance of services for the defendant by an officer and employee of the plaintiff while he was still in the plaintiff's employ. [52–53]

In a suit in equity by a corporation against another corporation which one still employed by the plaintiff had been instrumental in organizing to manufacture the same product as that of the plaintiff and in which he became a stockholder, the plaintiff was not entitled to an injunction against the defendant's soliciting sales to anyone who was a customer of the plaintiff at the time such employee left its employ where it appeared that the identity of customers for the product was widely known in the trade, that the defendant did not rely on the employee in building its customer list, and that the defendant did not violate any duty to the plaintiff in soliciting customers; nor was the plaintiff entitled to an injunction against the defendant's using machinery and methods like those used by the plaintiff at the time the employee left its employ where it appeared that the machinery and methods were widely known in the trade and were commonly copied by manufacturers one from another, and that any assistance derived by the defendant from the employee in connection therewith was unrelated to any trade secrets or confidential information which he had acquired through his employment by the plaintiff or in which the plaintiff had any property rights. [53]

In a final decree in a suit in equity granting certain relief to the plaintiff, a further provision that "all other prayers of the bill be dismissed" should be omitted. [53–54]

BILL IN EQUITY, filed in the Superior Court on November 26, 1956.

An interlocutory decree respecting a master's report was entered by *Gourdin*, J., and a final decree by *Macaulay*, J.

*Alfred N. Whiting*, for the plaintiff.

*Francis H. George*, for the defendant Blanch.

*Seward B. Brewster*, for the defendants Nelson and another.

WILKINS, C.J. The plaintiff is a manufacturer of wire brushes in Worcester. The defendant Blanch was for twenty-five years a stockholder, director, treasurer, and employee of the plaintiff, and is now a stockholder in the defendant Dersal Corporation. The defendant Nelson was an auditor and accountant of the plaintiff from 1935 to 1955 and an employee from November, 1955, to February, 1956. Dersal was incorporated in 1956 in circumstances later described. The defendant A. Adrian Anderson (not served with process), a resident of the State of New York, is its sales manager. This bill in equity seeks to recover salary paid Blanch by the plaintiff; damages for breach of his contract of employment; damages for wire ordered by him in bad faith for the plaintiff's account; an injunction against Dersal's soliciting the plaintiff's customers; an injunction against Dersal's using machinery or processes developed or designed by Blanch while an employee of the plaintiff; damages from Dersal for services rendered Dersal by Blanch while in the plaintiff's employ; and an accounting for Dersal's profits.

The case was referred to a master, who filed a report, which, after the sustaining of four exceptions of Blanch and Dersal, was confirmed by an interlocutory decree. A final decree was entered awarding the plaintiff $1,909.59 in damages against Blanch as to the wire, awarding the plaintiff $1 in damages against Blanch for breach of the contract of employment, and dismissing the bill against the other defendants. The plaintiff appealed from both decrees.

The plaintiff was incorporated in 1928 to engage in the wire brush manufacturing business previously carried on in Worcester by Blanch. The incorporators were Blanch, George Anderson (no relation of A. Adrian Anderson), and

one Quist, each holding two hundred fifty shares. They were the directors. Anderson was president and sales manager, and Blanch treasurer and clerk. Blanch ran the office and the plant, signed checks, negotiated contracts, purchased supplies, hired and discharged employees, took charge of production and shipping, designed tools and dies, and developed machines and methods of production, most of which were copied from other manufacturers. The business prospered. After the war the sales force was increased. In 1953, Brent Anderson, son of George, became assistant sales manager, and in January, 1954, was elected vice-president. About this time Quist died, and his stock was acquired by the Andersons and Blanch "in equal proportions." George Anderson died in June, 1954. On July 1, 1954, Brent and his mother obtained an option to purchase the capital stock of Blanch, who was approaching eighty years of age. On October 17, 1955, a contract was made to employ Blanch until December 31, 1957, at $15,600 annually, which was the largest salary paid by the plaintiff. As a result of growing friction between Brent and Blanch, the Andersons exercised their option, and the transfer of Blanch's half interest was completed on October 17, 1955.

The exercise of the option came as a shock to Blanch, and his attitude toward the business underwent a change. He and Nelson spent a great deal of time together outside of business hours. He began to take longer lunch hours, usually with Nelson, and ceased to come in on Saturdays. He did not neglect his duties as plant manager but continued to perform them for the most part in the same manner as previously. In October, 1955, Blanch and Nelson conceived the idea of starting a new business, and decided in favor of the wire brush business. It was necessary to find someone to take over sales, preferably one who could contribute capital. As a result A. Adrian Anderson, a friend of Nelson from New York, became associated in the new corporation, which was organized in February, 1956. Officers elected were A. Adrian Anderson president, and Nelson clerk and treasurer. There were four directors, A.

Adrian Anderson, Nelson, Anderson's wife, and one White. Nelson has since resigned as an officer and director.

Officers of the plaintiff heard about the formation of Dersal and the connection with it of Blanch and Nelson in late February or early March. At a meeting of the plaintiff's stockholders on April 26, 1956, the first order of business was the election of treasurer. Before this was done, Blanch denied backing Dersal or knowing what it would manufacture, and finally declined to say anything until he consulted his attorney. He was told that he would not be reëlected and was no longer welcome at the plant. He left the meeting, and has never since entered the plaintiff's premises. He was not reëlected treasurer or chairman or a member of the board of directors.

Following the exercise of the option Blanch followed a line of conduct not in harmony with the plaintiff's best interests. This conduct included planning the organization of, and participation in the formation of, Dersal; preparation of plans and designs for products to be manufactured by Dersal; helping Dersal to obtain manufacturing space and equipment; purchasing unneeded wire for the plaintiff for the purpose of injuring it; and concealing from the plaintiff such activities, including the denial of those activities when charged with them.

The plaintiff was warranted in discharging Blanch. His connection with Dersal was not compatible with his position with the plaintiff, and was a breach of contract. He did, however, render valuable services after the sale of his stock. The plaintiff "has been put to expense and suffered a loss as a result of Blanch's improper conduct and breach of contract." "Blanch's heart was not in his work and the elements of loyalty, coöperation, and interest were lacking, and their counterparts of disloyalty, secrecy, and hostility were present. This reduced the value of Blanch's services during this period."

The sums which the plaintiff seeks to recover as salary payments from Blanch total $9,400. These were made between October 20, 1955, when his allegedly disloyal acts

began,[1] and April 26, 1956, when he was discharged. The master found that the services actually performed were worth but $7,125, but that "[t]his does not take into account damages . . . from Blanch's breach of contract." Those are $2,375 in addition to damages for loss on the wire, which are $1,909.59.

The master goes on to state: "The question of what is the proper rule of damages to apply against Blanch is mainly one of law and not of fact. If the rule to apply is based upon the contract between the plaintiff and Blanch and the damages are those sustained by the former from the latter's breach of that contract, Anderson Corporation is entitled to recover from Blanch $2,375 plus $1,909.59 or a total of $4,284.59. If, however, that rule is not applicable . . . Anderson Corporation would be entitled to recover the difference between $9,400 and the net value of Blanch's services to the plaintiff. This net value was $2,840.41 and the amount Anderson Corporation would be entitled to recover would be $6,559.59."

1. The question of damages involves consideration of the effect of the sustaining of the exceptions to the master's report. The first two objections (which became exceptions[2]) filed by the defendants Blanch and Dersal were as follows: 1. "That the subsidiary facts set forth in the master's report do not, as a matter of law, constitute an adequate basis for the master's finding that Blanch's services to Anderson Corporation were worth only $7,125 after October 20, 1955, rather than $9,400, which was the contract price for such services, in that there was no evidence of value of such services other than the contract price." 2. "That there is no evidence to justify the master's ultimate finding that Anderson Corporation was damaged as a result of Blanch's breach of contract in the amount of $2,375."

---

[1] Elsewhere in the report it appears that the purchase of wire for the purpose of injuring the plaintiff occurred on October 19, 1955.

[2] Under Rule 90 of the Superior Court (1954) objections become exceptions only when appended to the master's report and filed. As hereinafter appears, there was not strict compliance with this rule. Since the result will not be affected and no argument has been addressed to us upon the subject, we consider the case upon the footing that the objections did become exceptions.

These objections, which seek to raise the question whether the unreported evidence was sufficient in law to support findings of fact, concern something which does not appear upon the face of the report. See *Israel* v. *Sommer*, 292 Mass. 113, 119–120; *Lowell Gas Co.* v. *Department of Pub. Util.* 324 Mass. 80, 90. Reports of evidence or summaries of evidence would be necessary to enable consideration of these matters. See *Minot* v. *Minot*, 319 Mass. 253, 258–259; *Morrison* v. *Morrison*, 320 Mass. 133, 135; *Royal Tool & Gauge Corp.* v. *Clerk of Courts for the County of Hampden*, 326 Mass. 390, 391. The defendants' briefs are filled with references to what was the evidence or to the absence of evidence on certain points. Of course, these arguments are not open. No evidence is reported. The case is to be judged upon the findings, as one of those briefs itself states, citing *Kyle* v. *Reynolds*, 211 Mass. 110, 112, and *Dodge* v. *Anna Jaques Hosp.* 301 Mass. 431, 435.

The master's attempt to report summaries of evidence applicable to each objection was contrary to Rule 90 of the Superior Court (1954). Not only was there no compliance with Rule 90 by "written request presented with the objection" (*Watkins* v. *Simplex Time Recorder Co.* 316 Mass. 217, 222), but there is no showing that there was "a stenographer selected or approved by the master before any evidence was introduced." *New England Factors, Inc.* v. *Genstil*, 322 Mass. 36, 44. *Patterson* v. *Simonds*, 324 Mass. 344, 351. *Stubbert* v. *Sergio*, 335 Mass. 91, 93. In these circumstances Rule 90 prescribes that "no such summary shall be made without special order of the court." This rule was enacted to expedite the dealing with master's reports in the Superior Court and in this court on appeal, and was not within the power of the master to waive. As was said in *Morin* v. *Clark*, 296 Mass. 479, 482, "The rule binds alike the parties, the master and the court. It is not to be ignored or evaded, but is to be made effective in all its parts according to their true meaning and intent." See *Pearson* v. *Mulloney*, 289 Mass. 508, 513–514; *Coughlin* v. *McGrath*,

295 Mass. 499, 503.   See also *Lindsay* v. *Swift*, 230 Mass.
407, 409, and *Millett* v. *Temple*, 280 Mass. 543, 547, cases
antedating Rule 90.   The summaries should have been dis-
regarded, and the exceptions should have been overruled.
The judge, however, sustained the exceptions.   This part
of the interlocutory decree must be reversed and exceptions
numbered 1 and 2 overruled.

2. Another irregularity in the master's report must be
noticed.   Rule 90 requires that "objections shall be ap-
pended to the report"; and that "Upon the filing of the
report in court a party whose objections are appended
thereto shall be deemed to have excepted to the report for
the reasons set forth in the objections . . . ." This means
physically attached to and filed with the report.   In the
case at bar the master at the end of the report copied the
objections, omitting signatures of counsel, and interspersed
this copy of the objections with material of his own which
we now discover after a delay due to an investigation,
avoidable by compliance with the rule, to be summaries of
evidence.   The original objections have never been filed and
presumably have been retained by the master.

3. Next we must determine the applicable rule of dam-
ages.   Blanch's performance of his contract did not live up
to his fiduciary relation as a general corporate officer to the
corporation.   *Lydia E. Pinkham Medicine Co.* v. *Gove*, 298
Mass. 53, 62, *S. C.* 303 Mass. 1, 4.   There are clear findings
that his services were worth less to the plaintiff by a defi-
nite amount than the sums he received in salary.   Restate-
ment: Trusts 2d, § 243.   The value of these services was
a question of fact.   *Maynard* v. *Royal Worcester Corset Co.*
200 Mass. 1, 6–8.   *Byam* v. *Carlisle-Ayer Co.* 272 Mass.
176, 179.   *Cross* v. *Sharaffa*, 281 Mass. 329, 331–332.   *Levine*
v. *Lawrence & Co. Inc.* 305 Mass. 210, 212.   *Downey* v. *Union
Trust Co.* 312 Mass. 405, 417.   Although we are urged to
impose a complete forfeiture, we have in mind the state-
ment in the *Gove* case, 303 Mass. 1, 4, that "Each case
must be determined in the discretion of the court with ref-
erence to the peculiar factors found to be present."   See

*Sullivan* v. *Sullivan,* 335 Mass. 268, 279. Compare *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57; *Production Mach. Co.* v. *Howe,* 327 Mass. 372. We are of opinion that the findings make out a case for apportionment of compensation to services properly performed. Restatement: Agency 2d, §§ 456, 469. The plaintiff is entitled to $2,275, which is the difference between the $9,400 which Blanch was paid and $7,125 which is all his services were worth.

4. Counsel for the defendant Blanch suggests that the master has found facts indicating that the plaintiff continued to pay Blanch while knowing all the facts upon which this suit was based, and so there could be made a finding of waiver. However this may be, the issue was not raised in the answers, and the master made no such finding even by implication. In *Chaplain* v. *Dugas,* 323 Mass. 91, 94–95, upon which counsel relies, it was pointed out that the jury's verdict could have been based upon a finding of waiver.

5. The finding of additional damages in the amount of $2,375 leads us to discuss the fourth exception to the master's report. The original objection was, "That the finding by the master that the damages from Blanch's breach of contract are $2,375 is incorrect as a matter of law in that the master's report sets forth the elements which went to make up the damages in the amount of $2,375 but those same elements had already been considered by the master in reducing the value of services by Blanch to Anderson Corporation after October 20, 1955, from $9,400, which was the contract price, to $7,125." This exception should not have been sustained. Its assertion that there was a duplication of damages is refuted by the record. Careful reading of the report shows that the $2,275 overpayment in the value of services is no part of the $2,375, loss and expense due to the breach of contract. The master's conclusion of $2,375, contrary to what the parties seem to assume, was not based upon his subsidiary findings. It was a finding upon all the evidence. As such the trial judge and we are bound by it "unless the subsidiary findings included in the report are sufficient in themselves to demonstrate that

the conclusion must be unsound in law." *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 25. *Paquette* v. *Fall River,* 338 Mass. 368, 373. That is not this situation. It was error to allow only nominal damages in this respect in the final decree.

6. The final decree also provides that Blanch pay $1,909.59 to the plaintiff against the delivery to him of the wire which the master found was purchased in bad faith. This was correct. Blanch makes no contrary contention. In this connection there was no error in sustaining the third exception to the master's report. This was, "That the finding . . . of the master's report that the net value of Blanch's services was $2,840.41 is, as a matter of law, inconsistent with his other findings as set forth in the report." This exception pointed out a duplication in damages with respect to the wire.

7. To recapitulate, the plaintiff is entitled to recover damages against Blanch of $2,275 (with interest from the filing of the bill) plus $2,375 (with interest from the filing of the bill) plus $1,909.59 (with interest from April 30, 1956, as provided in the final decree).

8. The plaintiff contends that it is entitled to recover from Dersal $500, the amount found by the master to be the value of the services rendered Dersal by Blanch while still in the plaintiff's employ. The master found that Blanch had never been an officer, director, or employee of Dersal, but is a major stockholder who has designed some of its machines and most of its products; and that Dersal's officers and directors knew of Blanch's position with the plaintiff, and accepted the contribution and advice he made to them with full knowledge of his obligation to the plaintiff. The plaintiff's contention that this $500 is in addition to the item of $2,375, if correct, is beside the point. It would be more pertinent to know whether the $500 represented any services rendered on any of the time included in the item of $2,275. On the findings this is a matter of doubt. Likewise unresolved is whether the figure of $500 as the value to Dersal is the equivalent of a loss of the same amount to the plaintiff through overpayment of salary. The

plaintiff relies on *Barden Cream & Milk Co.* v. *Mooney*, 305 Mass. 545. The findings here fall short of the facts in that case, and are insufficient to justify recovery on this item.

9. The plaintiff argues that it is entitled to injunctive relief against the defendants (a) from soliciting orders from and making sales to anyone who was a customer of the plaintiff on April 27, 1956, and (b) from using machinery, tools, and production techniques and methods similar to those in use by the plaintiff on April 27, 1956, and which previously had been developed for or by the plaintiff. The findings of the master preclude such relief.

(a) On the first point it was found that the identity of customers for wire brushes was widely known throughout the industry; that Dersal did not rely on either Blanch or Nelson in building its customer list; and that Dersal did not violate any duty owed to the plaintiff in connection with its customer solicitations. These findings distinguished the cases relied upon by the plaintiff in which the identity of customers was not widely known and in which reliance upon a former employer's lists was clear.

(b) On the second point, it was found that the machines and methods used in manufacturing brushes were widely known throughout the industry; that it was common practice for manufacturers to copy each other's machines, methods, and products; that any improvements which Blanch made for the plaintiff were not patentable; and that Blanch's advice and assistance to Dersal in designing tools, machines, processes, and products similar to those used by the plaintiff did not relate to trade secrets or confidential information which Blanch had acquired by reason of his employment by the plaintiff or in which the plaintiff had any property rights. These findings distinguish *Aronson* v. *Orlov*, 228 Mass. 1, and other cases upon which the plaintiff relies. The distinction clearly appears in the *Aronson* case (page 5).

10. The fifth item in the final decree, "That all other prayers of the bill be dismissed," should be omitted. Relief in this case is based upon the allegations of the bill as upheld by the findings and is not founded upon the prayers.

*Bleck* v. *East Boston Co.* 302 Mass. 127, 130. *Manazir* v. *Dahood,* 302 Mass. 290, 293. See *Cooperstein* v. *Bogas,* 317 Mass. 341, 342. No useful purpose is served in "dismissing" prayers which are not granted. It surely is not correct to "dismiss" a prayer for general relief, a prayer which is implied in any event. G. L. (Ter. Ed.) c. 214, § 12. Even where a substantive claim in a bill is not allowed, it is proper to omit all reference to the claim in the decree. *Rubenstein* v. *Lottow,* 220 Mass. 156, 161. *Vincent* v. *Plecker,* 319 Mass. 560, 562.

11. The interlocutory decree is modified by striking out the part sustaining exceptions numbered 1, 2, and 4 of the defendants Blanch and Dersal, and by substituting a statement that those exceptions are overruled, and as so modified, the interlocutory decree is affirmed. The final decree is reversed, and a new final decree is to be entered in conformity with this opinion. The plaintiff is to have costs, including costs of appeal, against the defendant Blanch.

*So ordered.*