Arlex Oil Corporation v. Commissioner.
Arlex Oil Corp. v. Commissioner
Docket No. 1159-66.
United States Tax Court
T.C. Memo 1967-235; 1967 Tax Ct. Memo LEXIS 26; 26 T.C.M. (CCH) 1199; T.C.M. (RIA) 67235; November 22, 1967
Edward T. Martin, 31 State St., Boston, Mass., for the petitioner. James E. Markham, Jr., for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent originally determined the following deficiencies in petitioner's income tax: Year
Deficiency
1962
$27,172.50
1963
16,381.39
1964
25,680.67 By an amended answer, respondent now asserts a deficiency for 1963 of either $22,910.07 or $23,261.72. The issues for decision are: (1) Was respondent's deficiency notice adequate? (2) Were commissions received by petitioner's treasurer on sales of oil by Tenneco additional income to petitioner? (3) If the above issue is determined affirmatively, what are the correct amounts for each of the years in question? Findings of Fact Petitioner had its *27 principal place of business in Lexington, Massachusetts, at the time of filing its petition herein. It filed its income tax returns on the accrual method for the years 1962, 1963, and 1964 with the district director of internal revenue, Boston, Massachusetts. During all years relevant herein, William E. Maloney was the treasurer and dominant person of petitioner. Its issued and outstanding stock was held in the following names: 1 share in Maloney's name; 899 shares in the name of his wife, Margaret Maloney; and 100 shares in the name of Michael P. Vidette, who was also its president. Maloney was the spokesman for petitioner and had actual control of the business. Petitioner was engaged in the business of selling oil. It purchased its oil from various suppliers, including Tenneco Oil Company. During the years in issue it bought approximately 25 percent to 30 percent of its oil from Tenneco. Prices of oil were subject to fluctuation. On purchases from Tenneco, petitioner would pay the agreed price. A credit memorandum would be prepared in connection with the sale indicating that a specified portion of the sale price was payable by Tenneco to Maloney. Subsequent to the end of each *28 month, the credit memoranda would be totaled. Tenneco would then issue a check or checks totaling that amount to Maloney. The credit memoranda totaled $34,554.23, $44,057.84, and $36,209.14 for 1962, 1963, and 1964, respectively. The amounts so paid to Maloney were characterized as brokerage commissions on the books of Tenneco. Maloney never otherwise attempted to act as an oil broker for Tenneco or any other oil company. Maloney reported the amounts received from Tenneco on his cash basis income tax returns as commissions received. In computing its inventory, petitioner utilized the full amount it paid Tenneco for oil and did not report the payments to Maloney as its income or reduce its inventory values by the amount of such payments. Respondent determined that the payments to Maloney should be included in petitioner's income and accordingly issued a deficiency notice showing the following asserted omissions from its income: Year
Amount
1962
$52,254.87
1963
31,502.67
1964
51,361.34 The identical explanation for each adjustment was as follows: It has been determined that you realized income in the amount of $ from Tenneco Oil Company in the taxable year *29 ended , which you failed to report in your return. Accordingly, your taxable income has been increased in the amount of $ . At all times material herein, petitioner was fully advised that respondent's position was predicated on the claim that the income from Tenneco, which Maloney claimed was taxable to him, constituted sales rebates or allowances from Tenneco to petitioner and therefore was income properly attributable to petitioner. Tenneco filed Forms 1099 (Information Return) showing the following sums actually paid to Maloney: Year
Amount
1962
$30,990.21
1963
8,552.20 [1]
1964
33,321.15
Maloney received an annual salary of $50,000 during the period 1962 through 1964. During the same period, Vidette received a salary of $25,000. By his amended answer and concessions, respondent now asserts that the following amounts should properly be included *30 in petitioner's income. Year
Amount
1962
$34,554.23
1963
44,057.84
1964
36,209.14
Petitioner would have directly received a substantial, if not identical, rebate or allowance if Tenneco had not made payments to Maloney. The amounts paid to Maloney were sales allowances due to petitioner and are accordingly attributable to petitioner. The amounts to be included in petitioner's income are $34,554.23, $44,057.84, and $36,209.14 for the years 1962, 1963, and 1964, respectively. Opinion Initially petitioner contests the adequacy of respondent's deficiency notice, although he is unclear whether his objection goes to its inherent validity or merely to the question of its effect on the burden of proof. In either case, his position is utterly without merit. The situation herein falls within the precise language and holding of Commissioner v. Stewart, 186 F. 2d 239 (C.A. 6, 1951), reversing on other grounds a Memorandum Opinion of this Court, upon which petitioner erroneously, and indeed incomprehensively, relies. In that case, the deficiency notice contained even less information. Nevertheless, the Court held it was valid, stating at p. 242: We *31 are of the opinion that the notice in the present case was sufficient where it fairly advised the taxpayer that the Commission has determined a deficiency, gave the taxpayer the amounts thereof and the years involved, and the taxpayer was fully advised, as shown by his petition filed with the Tax Court, of the reasons forming the basis of the Commissioner's action. [Citations omitted.] We turn to the principal issue herein, whether the Tenneco payments to Maloney, purportedly received as commissions on sales of oil, may be attributed to petitioner. Petitioner contends that Maloney earned the so-called commissions by acting as a broker on Tenneco's sales of oil to it. Alternatively, petitioner argues that even if the payments can be attributed to it, an offsetting deduction should be allowed for additional compensation paid to Maloney. Maloney was petitioner's principal witness. His testimony was not only self-serving, but was vague and unresponsive. Petitioner's arguments on brief reflect the naive assumption that we would accept Maloney's testimony as conclusive. We see no need to repeat in detail the testimony nor the determinations set forth in our Findings of Fact. Even *32 if we accept Tenneco's characterization of the payments to Maloney as commissions (which we are obviously not bound to do), this does not determine to whom the payments should be taxable. It is clear that, regardless of the actual ownership of the stock and without indulging in attribution, [2] Maloney was the dominant and controlling figure in petitioner's activities. It is equally clear that the arrangement with Maloney was a unique one and that petitioner would have directly received a substantial, if not identical, rebate or allowance if Tenneco had not made payments to Maloney. We are satisfied that Maloney's activities in relation to purchases from Tenneco were carried on *33 by him in his capacity as a representative of petitioner and on its behalf. As a consequence, the "commissions" constituted taxable income to petitioner. [3] In Ballentine Motor Co., 39 T.C. 348 (1962), affd. 321 F. 2d 796 (C.A. 4, 1963), we were faced with an analogous situation involving the taxability of rebates to an officer-controlling-stockholder in connection with sales made by the taxpayer corporation. We held such rebates taxable to the corporation, stating at page 355: C. M. Ballentine did nothing to earn the extra rebates other than what he did to enable the petitioners to earn their "caps." The payments to him were made because of the activity of petitioners in giving C.C.C. their installment paper, and C. M. Ballentine was acting in an agency capacity for his corporations in securing extra rebates for them. [Citation omitted.] *34 It requires little imagination to see how, with mere changes to take into account the fact that the situation herein involves purchases rather than sales, the above language would be directly applicable. As for petitioner's alternative contention that an offsetting deduction for additional compensation should be allowed, the simple answer is that petitioner has offered no proof of the reasonableness of Maloney's compensation beyond his annual salary of $50,000. We have no basis on the record before us for finding that this annual salary constitutes inadequate compensation. [4]
Finally, we turn to the computation of the proper amount to be included in petitioner's income. Petitioner reported its income on an accrual basis. The amount to be paid to Maloney was based on credit memoranda prepared at the time of the sale of the oil. In its petition, petitioner admitted that the amounts of *35 asserted income to it were as set forth in the respondent's deficiency notice. In its amended answer and through concessions, respondent has reduced the amounts for 1962 and 1964 and increased the amount for 1963 (although he claims alternative increased amounts for this particular year because of variations in end-of-the-month accruals). Neither party on brief has focused on the amounts which should properly be included, although petitioner seems to concede an increased amount for 1963 at least as great as that now asserted by respondent. We resist the temptation to indulge in legal theorizing regarding the general question of when an accrual basis taxpayer should be taxed on income which he has assigned and which should properly be taxable to him. On the assumption that the burden of proof is on the respondent at least with respect to 1963, we think it clear, under all the circumstances of this case, that the amounts taxable to it in each of the years before us are not less than those reflected in the credit memoranda issued by Tenneco at the time of sale. We therefore hold that petitioner's income for 1962, 1963, and 1964 should be increased by $34,554.23, $44,057.84, and $36,209.14, *36 respectively, the amounts accrued for each year on Tenneco's books. Decision will be entered under Rule 50. Footnotes
1. This amount was erroneous in that it reflected only the portion of the checks issued in 1963 as a result of purchases from the East Orange office of Tenneco and excluded the amounts paid as a result of sales by the Houston office to petitioner and two payments on account of East Orange transactions.↩
2. We recognize that section 318, I.R.C. 1954↩, is not applicable to the instant situation. We note, however, that the income tax returns of petitioner (including the attachments thereto) indicate that Maloney owned 90 percent of the stock, even though 899 shares were issued in his wife's name. And the record herein is devoid of any evidence as to the nature of the wife's participation in the affairs of petitioner, whether through capital invested, personal services, or otherwise.
3. We note that, absent consent of all shareholders and/or directors (as to which the record is unclear), Maloney may well have been under a fiduciary duty to account to petitioner for the payments. Weissmann v. Snyder, 338 Mass. 502, 156 N.E. 2d 21 (1959); Durfee v. Durfee & Canning, 323 Mass. 187, 80 N.E. 2d 522 (1948); Malden & Melrose Gaslight Co. v. Chandler, 209 Mass. 354, 95 N.E. 791↩ (1911). In any event, even if we assume that the requisite consent existed, the fact that Maloney might legally have been entitled to keep the Tenneco payments does not determine to whom they are taxable.
4. Maloney, with the lack of specificity which characterized his entire testimony, made the general claim that, by reason of his efforts, petitioner got a better price than it would otherwise have gotten from Tenneco. On the other hand, Tenneco's Division Manager testiiied to the contrary.↩