PATRICK W. CAIN & another *vs.* JOHN G. CAIN, JR.

Suffolk.    May 16, 1975. — September 15, 1975.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Partnership,* Accounting, Dissolution.   *Corporation,* Officers and agents, Stockholder, Close corporation, Dissolution.   *Fiduciary.*   *Practice, Civil,* Counsel fees.   *Waiver.*

Where it appeared that the plaintiff and the defendant entered into a partnership to carry on a transportation business through a corporation owned by the plaintiff, that shortly thereafter the plaintiff transferred 50% of the outstanding shares of the corporation to the defendant, and that the partnership agreement contained no provision as to the length of time it would remain in effect or how it could be terminated, the judge was warranted in finding that the partnership was dissolved by a letter from the defendant to the plaintiff terminating all agreements between them and that the stock ownership was not affected by the termination of the partnership. [471-472]

A finding that notice terminating a partnership agreement was waived
was not required because of the fact that after the notice the plain-
tiff and the defendant did not change their method of operating a
transportation business where their method of operation was as con-
sistent with their relationship as joint stockholders in a certain cor-
poration as with continuation of the partnership. [472]

A shareholder, officer, and director of a close corporation, whose duties
included selling the corporation's service and collecting its receiv-
ables, breached his fiduciary duty to the corporation by organizing
a business of the same nature, hiring two of the corporation's for-
mer employees, and taking away much of the business of the cor-
poration's most important customer even though the customer left
the corporation because it was dissatisfied. [473-477]

Where a shareholder, officer and director of a close corporation breached
his fiduciary duty to the corporation by competing with it, the cor-
poration was entitled to recoup all the profits he earned as a result
of the competition [477]; whether the corporation was entitled to
recover his entire salary or only the amount by which his salary
exceeded the value of his services depended on the totality of the
circumstances, including whether he actually performed substantial
services for the corporation [477-478]; the corporation was entitled
to enjoin him from competition as long as he remained its officer or
director [478-479].

This court had no authority under G. L. c. 156B, § 99 (b), to provide
for the dissolution of a corporation or to order the Superior Court
to entertain a petition for dissolution. [479]

BILL IN EQUITY filed in the Superior Court on June 20,
1974.

The case was heard by *Cross*, J.

*Stuart DeBard* for the plaintiffs.

*John M. Rose* for the defendant.

GOODMAN, J.    This is an appeal by the plaintiffs Patrick
W. Cain (Patrick) and Airport Express, Inc. (Airport),[1]
from a final judgment in an action against John G. Cain,
Jr. (John), in which the plaintiffs sought (among other
things) declaratory and injunctive relief, damages, and
an accounting. The case was tried before a judge who
filed "Findings, Rulings and Order for Judgment" (Mass.
R.Civ.P. 52[a]). The evidence is reported. Our summary
of the facts is taken primarily from the trial judge's find-

---

[1] The defendant (who has not appealed) did not press the allega-
tions in his answer that Airport "lacks the authority to sue." No ques-
tion is raised whether Airport should have been named as a plaintiff or
as a defendant.

ings and from those factual allegations made by the plaintiffs in their bill of complaint that were admitted by the defendant in his answer.

Patrick and John are brothers and the sole stockholders in Airport, a Massachusetts corporation engaged in the trucking business at the Boston airport (Logan). They each hold 50% of the outstanding shares. Patrick is the president and a director of Airport. John is treasurer, clerk, and a director.

In 1969 Patrick purchased Airport, an existing corporation, for $9,500. One of Airport's principal assets at that time, which it still possesses, was a certificate from the Interstate Commerce Commission (referred to as "ICC rights") which relates to Airport's authority to carry goods throughout Massachusetts. About six months later, John went to work for Airport. On August 10, 1971, Patrick and John executed a document entitled "Articles of Copartnership."[2] On September 29, 1971, Patrick executed and delivered to John a "bill of sale" under seal for fifty shares of Airport stock (constituting 50% of the outstanding shares) reciting receipt of "one ($1.00) dollar and other valuable consideration." Sometime in 1972 John was elected treasurer, clerk, and a director of Airport. From that time until the present the directors of Airport have been Patrick, Susanne Cain (Patrick's wife), John, and Esther D. Cain (John's wife).

---

[2] Among the provisions of this document (which "came out of a business management book") are the following: "[t]hat the said parties have ... formed a copartnership for the purpose of engaging in the transportation business" under Airport's name at that time; that "[a]ll profits and losses shall be shared equally"; that "[a] systematic record of all transactions is to be kept and made available to each partner for inspection"; that "[e]ach partner will devote his entire time and attention to the business and engage in no other business enterprise without the consent of the other"; that "[e]ach partner is to have a salary of $350 per week," and "[n]either party is to withdraw an amount in excess of his salary without the consent of the other"; that Patrick is to "supervise loading and unloading of freight and any other duties that pertain to the pick-up and delivery of freight"; that John is to "have charge of the office and records, dispatch of drivers and any other duties that pertain to the office," and that "[e]ach will have equal hours."

From 1972 until May, 1973, John borrowed amounts from Airport totalling $4,000. No portion of this sum has been repaid.

Under date of March 11, 1972, John delivered a letter to Patrick stating that "effective immediately I am hereby cancelling all contractual agreements between us. . . . The termination includes any and all written or verbal agreements of any type . . . ." In a separate letter sent on the same date, John, "[i]n accordance with the terms of the by-laws for Airport"[3], offered to sell his shares to the corporation; this offer was not accepted by Airport.[4] The corporation continued to operate as previously without change in officers and directors and with John and Patrick drawing equal salaries.

As of May 17, 1974, Novo Airfreight (Novo), a freight forwarder which accounted for a substantial part of Airport's business, terminated its agreement with Airport.[5] On or about the same date, John activated Airfreight Specials (Specials), a proprietorship of which he was the sole owner. Specials is a tenant, rent free, in Novo's space. Since then, 25% or 30% of Novo's business has been given to Specials, while Airport's share of Novo's business has declined from 50% to 7% or 10%. Two truck drivers left the employ of Airport in mid-May, 1974, and are now employed by Specials. There was conflicting testimony at trial whether Specials had taken over another of Airport's accounts.

There was also conflicting testimony as to access to corporate books and records and the corporate checkbook. Patrick claimed that John had denied him access to the

---

[3] Neither the articles of organization nor the by-laws of Airport appear in the record.

[4] John made several other offers to sell his stock either to Patrick or to Airport after March 11, 1972. At a meeting of the board of directors of Airport on May 11, 1974, it was voted to purchase John's shares for $40,000. The stock was never in fact purchased, and the trial judge declared this vote of the board voidable by the corporation.

[5] The agreement provided for termination upon a two-week notice by either party.

records, while John testified that Patrick had never re-
quested such access. Finally there was a conflict as to the
amount of time John devoted to Airport's affairs, with
John testifying that in 1974 on the average he worked
twelve to fifteen hours a day for Airport, while Patrick
testified that during that period John only kept the books
and did the billing and occasionally came into the office
for two or three hours.[6]

The final judgment granted relief only to the extent of
requiring repayment of the $4,000 borrowed by John from
Airport and declaring that the vote on May 11, 1974, (fn.
4) to have Airport purchase John's shares was voidable
by the corporation. The defendant did not appeal, and we
do not disturb that much of the final judgment.

Patrick contends that he also is entitled to the retransfer
of the 50% stock interest held by John and to damages
arising out of the breach of the partnership agreement —
both to be effected by way of a "partnership accounting."
Airport asks that John be enjoined from competing with
Airport, for damages arising out of past competition and
"other ["inimical"] actions," for the return of salary pay-
ments made to John from July 27, 1973, and for counsel
fees to be paid by John. Patrick also asks for an injunction
giving him access to the corporate books and records and
the corporate checkbook.

## I. The Partnership Claims

Patrick's claims are based on the partnership agreement
(fn. 2) which, he claims, John breached and of which, he
contends, the transfer of stock was a part. However, the
trial judge found (in his "rulings of law"; *Commercial
Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.*
276 Mass. 335, 338 [1931]) that the partnership agreement,
which contained "no time limit or term for the duration
of the partnership [or] ... provision as to how the part-
nership can be terminated," was dissolved on March 11,

---

[6] None of the conflicts referred to was resolved by the trial judge in
his findings.

1972, the date of the letter from John to Patrick. See G. L. c. 108A, § 31 (1) (b). He also found that "there was no agreement or understanding between the brothers that the transfer of the 50% interest in the enterprise was conditioned on the continued operation of the partnership."

These findings are not clearly erroneous. Mass. R.Civ.P. 52 (a), 365 Mass. 816 (1974). They are based on the face of the documents — the partnership agreement, the letter terminating it, the bill of sale, and the stock certificate. The trial judge could rely on them and discount, as he did, the confused and conflicting testimony on which Patrick seeks to rely. Nor was the trial judge required to find a waiver of the termination notice from the fact that the parties did not appear to have changed their method of operation after the notice. Their method of operation was as consistent with their relationship as joint stockholders in Airport as with a partnership. *Jones* v. *Brown,* 171 Mass. 318 (1898), on which the plaintiffs rely, is inapposite. There the court *sustained* a finding by a single justice of waiver of a notice based on *inconsistent* conduct. Whether a finding in this case that there had been a waiver of the termination notice might also have been sustained (which we need not decide), is immaterial. Cf. *Wilson* v. *Jennings,* 344 Mass. 608, 614-615 (1962).

Though technically upon the termination of the partnership by the letter of March 11, 1972, Patrick became entitled to an accounting (G. L. c. 108A, § 43), this does not aid him in his claim to John's stock which, on the trial judge's findings, was not a partnership asset or in any way affected by the termination of the partnership. Further, the damage claims are based on events which occurred after the letter of termination. The plaintiffs' brief refers to various grievances, none of which appears to have occurred before May, 1973 — the earliest date to which the plaintiffs' brief points.[7]

---

[7] Patrick's contention, which is based on the existence of the partnership, that he is entitled to access to Airport's books and records

## II. THE CORPORATE CLAIMS

The claims against John as shareholder, officer, and director of Airport stand quite differently, particularly in view of the recent case of *Donahue* v. *Rodd Electrotype Co. of New England, Inc.* 367 Mass. 578 (1975), in which the Supreme Judicial Court dealt with a close corporation, of which Airport is an obvious example. "[T]he enterprise remains one in which ownership is limited to the original parties . . . in which ownership and management are in the same hands, and in which the owners are quite dependent on one another for the success of the enterprise." *Donahue* case at 587. The court there held that "stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another . . . [and] this strict good faith standard [measures] . . . their duty of loyalty to the other stockholders and to the corporation" (footnotes omitted). *Donahue* case at 593.

The *Donahue* case, moreover, builds on and finds support in such cases as *Wilson* v. *Jennings,* 344 Mass. 608 (1962), and *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. 101 (1959), in which close corporations under particular circumstances were assimilated to partnerships or joint ventures in measuring the fiduciary duty owed to the corporation by a stockholder, officer, and director of the corporation. Thus in *Wilson* v. *Jennings,* 344 Mass. at 617, the court sustained the claim in a stockholder's derivative suit that the defendant, a director and officer of the cor-

must also fail. This does not preclude relief by the Superior Court, upon appropriate findings, to Patrick as director (Henn, Corporations, § 216, pp. 426-427 [2d ed. 1970]) or stockholder (*Varney* v. *Baker,* 194 Mass. 239, 241 [1907]; see G. L. c. 249, § 5, as amended by St. 1973, c. 1114, § 291). Cf. *New England LNG Co. Inc.* v. *Fall River,* 368 Mass. 259, 260-261, fn. 1 (1975).

We do not understand that Patrick is seeking a partnership accounting apart from these claims. The business generally appears to have been handled through Airport, leaving nothing to require a partnership accounting.

poration, who was also the operating shareholder, had "attempt[ed] to seize for his own benefit an advantageous opportunity which belonged to Polytop [the corporation]" and restricted the defendant's competition with the corporation. The court said, "Doubtless, while any joint venture in corporate form continued and while Jennings [the defendant] was a director and officer of Polytop, Jennings and his wife were bound to act only in its best interests." *Wilson* case at 620. See *Samia* v. *Central Oil Co. of Worcester, supra,* at 122 (the defendants, who were also shareholders, "were not free, as directors of Central, to take wholly for themselves a business opportunity of Central"). Whatever the limitation[8] on the extension in the *Donahue* case, *supra,* at 597, of "this strict duty of loyalty to all stockholders in close corporations," that duty seems to us to be particularly applicable to the circumstances in this case, and we look to partnership law to assess John's duty to Airport and whether he breached it when he organized Specials, hired former Airport employees, and took much of Novo's business away from Airport.

Such competition is a clear violation of the fiduciary duty owed by one partner to another. "[T]he general rule [is] that a partner will not be permitted to obtain for himself profits arising from carrying on a separate business of the same nature as that of the firm . . . but must account to his copartner for the benefits derived therefrom." *Holmes* v. *Darling,* 213 Mass. 303, 306 (1913). *Shulkin* v. *Shulkin,* 301 Mass. 184, 192-193 (1938). Henn, Corporations, § 22, p. 54 (2d ed. 1970). Crane and Bromberg, Partnership, § 68, p. 391 (1968).

Indeed, John's acquisition of Novo's business, formerly enjoyed by Airport, whether viewed as the appropriation of a corporate opportunity or direct competition with Airport (see Henn, Corporations, § 236, p. 459 [1970]) is, in the circumstances of this case — quite apart from his posi-

---

[8] See concurring opinion by Wilkins, J., in the *Donahue* case at 604 and, e.g., part IIIa and fn. 7 of this opinion.

tion as a stockholder in a close corporation — a violation of John's duty as an officer and director "reasonably to protect the interests of the corporation." *Production Mach. Co.* v. *Howe,* 327 Mass. 372, 377 (1951), in which an officer was held responsible to the plaintiff corporation for profits he had made through another corporation (wholly owned by him) from the manufacture of a saw-sharpening machine. The plaintiff corporation could recover because (though then manufacturing heavier machinery) it was equipped to make the machine and was contemplating expanding into the manufacture of this type of machine — something less drastic than the direct competition in this case which "prevent[ed] or hinder[ed] the corporation in effecting the purposes of its creation." *Lincoln Stores, Inc.* v. *Grant,* 309 Mass. 417, 421 (1941) (dictum). *Weismann* v. *Snyder,* 338 Mass. 502, 505 (1959) (indicating as a consideration whether "the corporate charter powers were broad enough to include sales activity of the type and on the scale undertaken"). *Anderson Corp.* v. *Blanch,* 340 Mass. 43, 50 (1959) (holding that in establishing a competing company the defendant "did not live up to his fiduciary relation as a general corporate officer to the corporation"). *Rosenblum* v. *Judson Engr. Corp.* 99 N. H. 267, 273 (1954). See *Durfee* v. *Durfee & Canning, Inc.* 323 Mass. 187, 193, 199-203 (1948); Note, Fiduciary Duty of Officers and Directors Not to Compete with the Corporation, 54 Harv. L. Rev. 1191, 1197-1198 (1941).

The competition in this case is quite different from the type of activity in which an officer or director of a corporation may be expected to engage as "a natural concession to commercial practice" (see Note, 54 Harv. L. Rev. at 1197) where the office or directorship is not in a close corporation and is not a full-time job. Here one of John's duties to Airport was, he testified, as a salesman to promote for Airport the very business he had appropriated for himself. Further, he testified that another of his duties was to collect receivables, and this placed him in conflict with his personal interest in keeping for himself Novo's good will

and business since Novo was in debt to Airport, the exact
amount of which was in question.[9]

John's appropriation of Novo's business is not excused
by the trial judge's findings that "Airport lost this business
because Novo Airfreight was dissatisfied with Patrick as
his attitude was one of non-cooperation [and that] [f]or
six or seven months prior to May, 1974 Novo Airfreight
was looking for a carrier to replace Airport." From the
testimony of Novo's manager and John's testimony it ap-
pears that they had discussed the withdrawal of Novo's
business from Airport and its assumption by John for about
thirty days before the consummation of the arrangement
(on May 17, 1974) between Novo and John's operation as
Airport Specials. Yet it appears John did not consult
Patrick about this imminent loss to Airport. However,
whether John was acting in good faith is not decisive.
"Breach of the duty could be found although no corrup-
tion, dishonesty, or bad faith was involved." *Production
Mach. Co.* v. *Howe,* 327 Mass. at 378. John could not enter
into an arrangement inconsistent with his fiduciary duty.
It was incumbent on him either to get Patrick's consent[10]
or relieve himself of his obligation to Airport by severing
his relationship as officer, director, and equal stockholder.[11]
"[T]he argument that a fiduciary is not subject to the
general rule here involved where the venture is one that the
corporation itself is unable to take advantage of is not per-
suasive." *Durfee* v. *Durfee & Canning, Inc.* 323 Mass. at

---

[9] We need not attempt to determine whether John's duties were as
officer, director, or employee. Even if they were those of an employee,
it was his duty as director to see to it that they were performed con-
sistently with the welfare of the corporation.

[10] There is no evidence of inequitable conduct by Patrick which
might permit John to claim unclean hands. Nor was that defense
pleaded. See *American Window Cleaning Co. of Springfield* v. *Cohen,*
343 Mass. 195, 201 (1961); *Wilson* v. *Jennings,* 344 Mass. at 619.

[11] We are not here concerned with a minority stockholder not in-
volved in management.

202. *Irving Trust Co.* v. *Deutsch,* 73 F. 2d 121, 124 (2d Cir. 1934), cert. den. 294 U. S. 708 (1935).

For John's breach of fiduciary duty, Airport[12] is entitled to recoup from John all the profits he made from Novo's business and any other business competitive with Airport. (There is an indication in the transcript that John handled such other business.) *Production Mach. Co.* v. *Howe,* 327 Mass. at 378-379. See *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1, 10-11 (1939); Henn, Corporations, § 236, p. 460 (2d ed. 1970). However, the court did not reach this issue and made no findings as to John's profits. The case must therefore be remanded for this purpose to the Superior Court.

Airport also claims that John should be required to repay to the corporation the salary he received from the time he began competing with Airport by the activation of Specials.[13] But whether he should be required to repay his entire salary or whether he should receive a credit for the actual value of his services depends on the totality of

---

[12] We follow "[t]he usual practice in Massachusetts [which] has been to afford relief in a case of this character to the corporation, on the ground that the stockholders have only derivative rights against one who has wronged their corporation." *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. at 123. This is not inconsistent with *Donahue* v. *Rodd Electrotype Co. of New England, Inc.* 367 Mass. 578 (1975). Although the *Donahue* case was considered as an action "in the personal right of the plaintiff [stockholder]" (see fns. 2, 4), it describes the fiduciary duty on which it is based as running "to the other stockholders *and to the corporation*" (emphasis supplied). *Donahue* case at 593. Further, the court suggested as an appropriate judgment the payment to the corporation of the amount the defendant received from the corporation for shares of his stock. While the "violation of his fiduciary duty [was] to the other stockholders," it consisted in "obtain[ing] assets from his corporation" for which it was entitled to reimbursements. *Id.* at 603. See *Lydia E. Pinkham Medicine Co.* v. *Gove,* 303 Mass. 1, 13 (1939). See also *Shulkin* v. *Shulkin,* 301 Mass. 184 (1938), in which profits made by a partner in breach of his fiduciary relationship were treated as a partnership asset subject to a partnership accounting.

[13] The plaintiff puts this date as July 23, 1973. From our reading of the record, it would appear that John began operating Specials on May 15 or May 17, 1974.

the circumstances, including John's good faith and whether he actually performed substantial services to Airport. See *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. at 4 (complete forfeiture refused; "the salaries paid to officers were not compensation for services in the ordinary sense at all"); *Production Mach. Co.* v. *Howe*, 327 Mass. at 379 (total forfeiture of compensation where the record was sparse as to the benefits conferred by the defendant's services); *New England Inv. Corp.* v. *Sandler*, 329 Mass. 230, 237 (1952) ("In view of the manner in which Sandler managed the corporation for his personal benefit, he is not in a position to charge for possible incidental benefits which the corporation may have received from his management"); *Anderson Corp.* v. *Blanch*, 340 Mass. at 50-51 ("apportionment of compensation to services properly performed" on the basis of "clear findings" of the specific value of the services). See also *Shulkin* v. *Shulkin*, 301 Mass. 184, 194 (1938) (wrongdoing partner did not forfeit salary in a partnership accounting); *Greenan* v. *Ernst*, 408 Pa. 495, 514-515 (1962) (applying "the old adage that 'the laborer is worthy of his hire' ").

The evidence in this regard was oral and conflicting. The differences can best be resolved by findings in the Superior Court, which it can thereupon use as a basis for deciding the extent (if any) to which repayment should be required.

Airport is also entitled to injunctive relief against competition by John so long as he is an officer or director of Airport (*Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. at 14; see *Wilson* v. *Jennings*, 344 Mass. at 620-621) and, under the *Donahue* case, *supra*, so long as he is a shareholder in Airport. See *Shulkin* v. *Shulkin*, 301 Mass. at 190 ("[T]he defendant could not properly engage in business which was in competition with that of the partnership"). If he disassociates himself from Airport, there appears to be no reason on this record to prohibit him from engaging in the trucking business in competition with Airport. *Anderson Corp.* v. *Blanch*, 340 Mass. at 53. See *Na-*

*tional Hearing Aid Centers, Inc.* v. *Avers,* 2 Mass. App. Ct. 285, 291 (1974).

### III. Miscellaneous Claims (Patrick's)

Patrick's other contentions do not require extended discussion.

a. Dissolution of the corporation. His contention, as an alternative to a partnership accounting (see part I), that this court provide for the dissolution of Airport is inconsistent with G. L. c. 156B, § 99(b), which lodges such jurisdiction in the Supreme Judicial Court. "[T]he stockholder in the close corporation or 'incorporated partnership' may achieve dissolution and recovery of his share of the enterprise assets only by compliance with the rigorous terms of the applicable chapter of the General Laws." *Donahue* v. *Rodd Electrotype Co. of New England, Inc.* 367 Mass. at 591. That the Supreme Judicial Court under G. L. c. 211, § 4A, may refer a petition for dissolution to the Superior Court does not give us the power to order the Superior Court to entertain such a petition.

b. Counsel fees. Patrick contends that he is entitled to reimbursement for counsel fees from John personally in litigating Airport's claims and relies on *Wilson* v. *Jennings,* 344 Mass. at 621, in which the court refused to disturb such an award. The court held that "[a]wards of this type, in such cases, commonly rest in sound judicial discretion." The Superior Court in this case made no findings on the issue and made no award. At least to the extent that further proceedings may bring additional funds into the corporation, Patrick under general principles is entitled to reimbursement from those funds for counsel fees in its behalf. *Commissioner of Ins.* v. *Massachusetts Acc. Co.* 318 Mass. 238, 242-243 (1945). We do not decide in the abstract what circumstances might call for the application of *Wilson* v. *Jennings,* 344 Mass. at 621. See *Samia* v. *Central Oil Co. of Worcester,* 339 Mass. at 129.

## IV. CONCLUSION

In accordance with this opinion, the final judgment is affirmed with the following additions. The Superior Court shall:

(1) enjoin the defendant from competing with Airport, the exact scope of such competition to be determined in further proceedings in the Superior Court (including, at the discretion of the Superior Court, the taking of evidence) and the injunction to continue so long as John is a stockholder, officer, or director of Airport;

(2) determine upon further proceedings (including, in the discretion of the Superior Court, the taking of further evidence) to the date of such determination:

(a) the profits made by John from the aforesaid competition, which the Superior Court shall order to be paid to Airport with interest;

(b) the salary received by John from Airport from May 17, 1974, which the Superior Court shall order to be repaid to Airport with interest, crediting him, if the court deems it appropriate, with such sums, if any, as the court shall determine to represent the value of his services to Airport;

(c) the extent, if any, to which John should be ordered to permit Patrick access to the books and records of Airport;

(d) what amount, if any, should be paid to Patrick as counsel fees and by whom.

*So ordered.*

*Costs of this appeal to be taxed against the appellee.*