New England Investment Corp. *v.* Sandler.

---

NEW ENGLAND INVESTMENT CORPORATION *vs.* MURRAY SANDLER & others.

Suffolk. April 10, 1952. — July 8, 1952.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Corporation*, Officers and agents. *Interest.*

In a suit in equity by a corporation for an accounting of its funds allegedly misused by the defendant while acting as its manager, treasurer and director, no error appeared in the exclusion by a master of evidence of the fair value of the defendant's services where no claim for compensation by him was put in issue by the pleadings and the record did

not show that the corporation expected or ought to have expected to pay for his services and did show that he managed the corporation for his own purposes in breach of his fiduciary duty to it. [236–237]

Belief by an officer of a corporation that he owned or had control of all of its stock and had sole charge of its affairs did not relieve him of obligation to account to it for its money which he improperly used for his own purposes. [237–238]

An officer of a corporation was liable to it for interest on its money which he caused to be paid wrongfully to himself or to others. [238]

BILL IN EQUITY, filed in the Superior Court on July 19, 1950.

The suit was heard by *Forte*, J., on reports of a master.

*Francis T. Leahy*, (*Louis Winer & William B. Shevory* with him,) for the defendant Sandler.

*David Burstein*, for the plaintiff.

WILLIAMS, J. This is a bill in equity by New England Investment Corporation for an accounting by the defendant Sandler, its former treasurer and director, as to funds of the corporation which he is alleged to have misused. It is sought to reach and apply shares of stock owned by him in four corporations, S. & E. Realty Corporation, Sandler Realty, Inc., Fellsway Motors, Inc., and Stratton Finance Company, Inc., which are joined as defendants, and to obtain an order that he deliver to the plaintiff certain of its records and documents which he holds.

The case was referred to a master, who filed a report and, after an interlocutory decree recommitting the case for further findings, a second or supplementary report. These reports were confirmed and exceptions by Sandler to the original report overruled by a second interlocutory decree. Sandler and the four defendant corporations have appealed from a final decree, the provisions of which are hereinafter stated. The findings of the master, in summary, are as follows. The plaintiff corporation was organized in September, 1946, pursuant to an agreement between Sandler and one Sher whereby each was to receive 125 shares of the 250 shares of the corporate stock to be issued. There were other provisions respecting the payment of salaries, and the payment of a part of the expenses of Sandler's office which

was to be used by the corporation. The agreement was to terminate when the parties were no longer associated as stockholders. On or about March 25, 1947, Sher agreed to sell his shares to Sandler. The sale was consummated by transfer of the shares to one Goldfine, Sandler's father-in-law, who paid to Sher the agreed purchase price. Thereafter until July 17, 1950, one Slobodkin, attorney for Goldfine, was president, Sandler was treasurer, and Slobodkin, Sandler, and one Rittenberg were directors. After the sale Sandler "assumed complete charge of the . . . corporation and handled" its affairs "as if he were owner of all . . . [its] assets." Although he contends that by arrangement with Goldfine he became the equitable owner of the shares transferred by Sher to Goldfine, the master finds that "at all times Goldfine was the owner of the stock acquired from Sher and . . . Sandler had no legal or other interest therein."

In June, 1947, a bill in equity was brought by Sher to rescind the sale of his stock because of alleged fraud on the part of Sandler. Following a decision of this court in February, 1950 (see *Sher* v. *Sandler*, 325 Mass. 348), the latter was ordered to transfer his 125 shares of stock to Sher. Sandler "duly complied with said decree," and thereafter Sher and Goldfine owned the stock of the corporation, each having 125 shares. On July 17, 1950, Slobodkin and Sher were elected respectively president and treasurer, and Slobodkin, Sher, and Rittenberg directors. No meeting of stockholders or directors had been held between March 28, 1947, and July 17, 1950. At the meeting of stockholders on the latter date Goldfine learned from an accountant's report, admitted by Sandler to be correct, of the financial transactions of the corporation previous to March 31, 1950. Thereupon the instant suit was authorized and Sandler notified that he had been removed as treasurer and director. Return by him of the books and records of the corporation was demanded and refused.

The master reported the following findings respecting Sandler's dealings with the funds of the plaintiff. Previous

to July 16, 1950, Sandler had borrowed personally from the plaintiff sums totaling $18,285.91, and on that date owed the plaintiff that amount, with interest of $3,369.71. Stratton Finance Company, Inc., a corporation in which Sandler owned all of the stock and was the principal officer, had borrowed relatively large sums from the plaintiff and as of July, 1951, owed the plaintiff a balance of $6,797.57 with interest amounting to $1,223.55. Standish Investment Co. had borrowed $1,966.88 from the plaintiff on July 18, 1947, at a time when the former had no assets with the exception of a few items of office furniture and was in debt to the Sandler controlled Stratton Finance Company, Inc., in the sum of $5,375.52 which it was then unable to pay. All of the stock of Standish was owned by Sandler. This loan was improperly made and Sandler is obligated to repay to the plaintiff the balance due on the loan amounting to $1,806.10 with interest of $324. On April 10, 1947, Sandler had caused the plaintiff "to issue its check to Hub Auto Supply, Inc., for the sum of . . . $5,000 . . . and on October 31, 1947, its check for . . . $10,000" to William B. Sandler. William B. Sandler was a brother of the defendant Sandler and the sole owner of Hub Auto Supply, Inc. No interest was charged on these sums and no arrangements were made for repayment. "No note or evidence of indebtedness was ever executed." Sandler owes these sums to the plaintiff with interest amounting to $3,500. Sandler also owes $1,000 with interest of $80 on the balance of an unauthorized loan of $3,000 made on August 31, 1948, to Fellsway Motors, Inc., a corporation in which Sandler owned stock and of which he was an officer.

On September 4, 1947, Sandler paid $500 and on October 6, 1948, $1,500 to the "Combined Jewish Appeal" with corporate funds to redeem his personal pledges to this "Appeal" of those amounts and therefore owes the plaintiff $2,000 with interest of $352.75. Sandler owes $1,035.46 which the plaintiff paid as subscriptions for "Credit Reports" which had been used by Sandler many years before the corporation was formed and which "he used primarily

for his personal purposes." Sandler paid his legal expenses in defending the suit of *Sher* v. *Sandler* from corporate funds to the amount of $2,667.47. He owes this sum with interest of $149. He also owes $1,597.25 which he caused to be paid to the owners of the Little Building for rent due from Standish Investment Co. which amount was improperly charged as "office expenses" on the books of the plaintiff corporation. Interest due on this amount is $247.96. Sandler paid to University Travel Co. for expenses of trips to Europe and Israel from the funds of the plaintiff $2,327.40. At the times of the trips the corporation "was without cash assets of any kind with which to make any investments." The master stated that he was "unable to find that any of the money . . . was used for any bona fide purpose of the . . . corporation" and found that Sandler owes the above sum with interest of $382.03.

The master found that all of these payments of corporate funds were improperly made by Sandler. He found in respect to the payments made to the defendants Fellsway Motors, Inc., and Stratton Finance Company, Inc., that "While payment[s] made to them were unauthorized, and the defendant, Sandler, by reason thereof is personally indebted to the plaintiff for said amount[s] . . . the Stratton Finance Company, Inc., is indebted to the plaintiff in the principal sum of . . . $6,797.57; and . . . Fellsway Motors is indebted to the plaintiff in the sum of . . . $1,000. Payments by either of said corporations would eliminate these items from the findings against the defendant Sandler by said amount[s]." The master found that the total amount of Sandler's indebtedness to the plaintiff was $70,970.16, including interest from the dates of the separate payments and withdrawals. In this total are items of $3,500 for rent and $3,912.54 for stenographic service. In the above mentioned agreement between Sher and Sandler it was provided that the corporation "shall pay one half of the cost of the stenographic service in the office of the corporation and the other one half is to be paid for either by Murray Sandler or by some other corporation with which he

is associated . . . . Murray Sandler agrees to pay the rent bill and the electric light bill of the office of the corporation." Sandler paid the entire cost of the stenographer amounting to $7,825.07 beginning with May 1, 1947, and ending with August 21, 1950, and also the entire rent from funds of the corporation. The master has charged him with one half of the expense of the stenographer or $3,912.54, and with $3,500 the amount of the rent. After the sale by Sher of his stock to Goldfine the agreement between Sher and Sandler was terminated. Sandler thereafter was no longer bound by the agreement to pay part of the office expenses of the corporation in the manner therein provided. The master, however, stated, "The defendant Sandler testified, and I so find, that this [distribution of expense] represented a fair division of the expenses of the office between the plaintiff corporation and the defendant, Sandler."

In his supplementary report the master stated in reference to the various loans of corporate funds made by Sandler, "I find that the defendant, Murray Sandler, according to his own testimony, used the funds of the New England Investment Corporation as if they were his own, and notwithstanding the fact that the New England Investment Corporation was a finance corporation engaged in loaning money for profit, he made the loan to the said Stratton Finance Company, Inc., without any charge for interest and without receiving a note or any evidence of indebtedness from said Stratton Finance Company, Inc. On all the evidence, I find that said loans were made by the defendant, Murray Sandler, as an officer and director of the corporation, without authority and for personal purposes, and he is, therefore, obligated to the plaintiff corporation" for the amounts as set out in the original report. Regarding the finding that Sandler was obligated to pay to the plaintiff the sum of $1,080, which was the balance of the amount lent to Fellsway Motors, Inc., with interest, he found "that the plaintiff corporation was a finance corporation and loaned money, its profit being the interest received for the use of same; that in making the . . . $2,000 loan to the

Fellsway Motors, Inc., . . . Sandler, because of his failure to charge interest and because as a director and officer of said plaintiff corporation, he made this loan without authority and for personal purposes to the said Fellsway Motors, Inc., he is, therefore, obliged to pay to the said plaintiff the amount of . . . $1,080 as set out . . . [in] my original report."

It appeared in the supplemental report that a claim of the plaintiff for $491.67, to which we have not referred in this opinion, has been waived by the plaintiff.

In the final decree it is ordered that the defendant Sandler pay to the plaintiff the sum of $70,599.70 with interest from July 16, 1951, amounting to $1,538.16; that the defendant Stratton Finance Company, Inc., pay to the plaintiff the sum of $6,797.57 with interest from July 16, 1951, amounting to $174.44; that the defendant Fellsway Motors, Inc., pay to the plaintiff the sum of $1,000 with interest from March 31, 1950, in the amount of $103.16; that the defendant Sandler is to be credited with any payments hereafter made to the plaintiff by Stratton Finance Company, Inc., and Fellsway Motors, Inc.; and that if the amount which the defendant Sandler is obligated to pay to the plaintiff is not paid, the master is directed to sell Sandler's shares in S. & E. Realty Corporation, Sandler Realty, Inc., and Stratton Finance Company, Inc., to satisfy Sandler's indebtedness to the plaintiff. Sandler is also ordered to deliver to the plaintiff its books and records.

The appeal from the final decree opens for our consideration the interlocutory decrees, from which no appeals were taken, so far as those interlocutory decrees erroneously affect the final decree. See *Nichols* v. *Kimball*, 272 Mass. 325, 332; *Boston Consolidated Gas Co.* v. *Department of Public Utilities, ante,* 124, 128. The objections by Sandler to the master's report, which by rule have become exceptions, are twelve in number. Exception numbered 6 relates to the finding of the master as to the claim which now appears to have been waived. Exception numbered 12 is based on the refusal of the master to admit evidence

offered by Sandler that during the period covered by the master's report he, Sandler, rendered valuable services to the plaintiff corporation for which he received no compensation and that these services were fairly worth $45,000. Such claim for compensation was not put in issue by the pleadings. In his answer Sandler stated that he charged the corporation nothing for his services. There is nothing in the record to indicate that the corporation expected or ought to have expected to pay for Sandler's services. See *Shaw* v. *Harding*, 306 Mass. 441, 446. In view of the manner in which Sandler managed the corporation for his personal benefit, he is not in a position to charge for possible incidental benefits which the corporation may have received from his management. *Production Machine Co.* v. *Howe*, 327 Mass. 372, 379. See *Lydia E. Pinkham Medicine Co.* v. *Gove*, 303 Mass. 1. There was no error by the master in excluding the offered evidence or by the judge in overruling the exception to its exclusion. We perceive no merit in the other exceptions. Each is based on an objection to a finding of a particular item of Sandler's indebtedness to the plaintiff, assigning "for reason therefor that the findings and conclusions by the master and the law applicable thereto do not warrant this specific finding." In the absence of a report of the evidence these findings were binding on the judge of the Superior Court and are binding on us. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435.

No error appears in the final decree. Sandler contends that from March 28, 1947, to July 17, 1950, he was justified in believing that, with Goldfine's consent, he was in sole control of the corporation and "required no affirmative action by others in his treatment of the affairs of the corporation," and that "Goldfine, and his representatives . . . were content to allow . . . [him] full management and control." He also contends that he is not responsible for interest on his personal loans from the corporation. The findings of the master clearly demonstrate breaches of Sandler's fiduciary duty to the corporation extending substantially over the entire period in question. Mere belief

on his part that he owned or had control of all the stock of the corporation does not relieve him of his obligation to account for the moneys of the corporation which he has improperly used for his own purposes. *Little* v. *Phipps,* 208 Mass. 331, 334. *Lazenby* v. *Henderson,* 241 Mass. 177, 180. *M. McDonough Corp.* v. *Connolly,* 313 Mass. 62, 66. *Production Machine Co.* v. *Howe,* 327 Mass. 372, 377–378. He is also accountable for interest on the moneys of the corporation which he has caused to be paid wrongfully either to himself or to others. *Production Machine Co.* v. *Howe, supra.* See *Winchell* v. *Plywood Corp.* 324 Mass. 171, 181. The interlocutory decrees are affirmed and the final decree is affirmed with costs of this appeal.

*So ordered.*