**WORMHOUDT LUMBER COMPANY OF OTTUMWA, Appellant,**

v.

**Jon CLOYD, Appellee.**

**No. 55983.**

Supreme Court of Iowa.

June 26, 1974.

Johnson, Bauerle & Hester and Max H. Ruschmeyer, Ottumwa, for appellant.

Moreland & Vinyard, Ottumwa, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP, and HARRIS, JJ.

UHLENHOPP, Justice.

This case involves the obligation of an agent to be loyal to his principal.

Wormhoudt Lumber Company of Ottumwa, Iowa, employed Jon Cloyd as its agent, paying him a salary plus a bonus computed on the company's profits. His duties included finding construction jobs and bringing property owners and contractors together, whereby the company would sell building materials. In a typical situation Cloyd would locate a property owner who desired certain construction, or such a property owner would himself come to the company. Cloyd would compute the cost of construction, including material, labor, and, apparently, a profit for the contractor. If the owner was satisfied with the price, Cloyd would seek a contractor who would take the contract at that price. If Cloyd found such a contractor, the contract between the property owner and the contractor would be closed, the contractor would perform the contract, the property owner would pay the contractor the price, the contractor would pay the company for the material, and the contractor would receive the profit (or stand the loss) on the contract. If the contractor paid the company its invoices for materials within 30 days, he received a 10% discount from the list price of the material, in accordance with the custom in the trade.

By virtue of his employment with the company, Cloyd thus found himself to be a bridge between owners who wanted construction done and contractors who wanted jobs. He saw the 10% cash discount going to the contractors who paid invoices on time and decided he should have part of the discount. He therefore got several contractors secretly to split that 10% with him; they did so to get jobs. The company knew nothing of this. After a contractor settled with the company in its office, the contractor and Cloyd would go to some

secluded place in the lumberyard where the contractor would pay Cloyd off.

This practice apparently worked so well that Cloyd exploited another opportunity which his employment provided—taking half of contractors' profits on jobs. He arranged this in the following way. When a property owner wanted construction done, Cloyd obtained a commitment from one of the contractors for a fixed amount for labor. To that Cloyd added the cost of the material at retail and the contractor's profit. He then priced the job accordingly. When the contractor completed the job and the property owner paid the contractor the price, the contractor paid himself the agreed amount for labor and paid the company for the material less 10% discount. The contractor then secretly "kicked back" to Cloyd half of the 10% discount and also half of the profit.

On January 21, 1967, Cloyd left the company's employment. Soon afterward, one of the contractors reported to the company what had been going on. Two of the contractors, Gary Johnson and Jerry McCall, sued Cloyd to recover the payments they had made to him. Cloyd defended, and eventually Johnson and McCall dismissed their suits—understandably, in view of their complicity in Cloyd's breach of loyalty to the company. See Restatement, Restitution, § 140.

The company then brought this suit in equity against Cloyd for an accounting of the secret payments he obtained in the course of his employment. The company brought out at trial the facts we have related. The evidence shows that Cloyd obtained payments from several contractors.

 The case presents a flagrant breach by an agent of his duty to be loyal to his principal. If an agent is able to reap extra profits from third persons in the course of his employment—in this case, by getting contractors to take less than they normally would get—the agent must hand over those profits to the principal in

whose employment he made them. The agent's duty of undivided loyalty is one of the first and fundamental principles of the law of agency. That duty encompasses the obligation to pass back to the principal any profits which the agent gleans.

 The general principle is stated thus in § 387 of the Restatement of Agency 2d:

> Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters connected with his agency.

And § 388 states with respect to profits:

> Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal.

As stated in 3 Am.Jur.2d Agency § 223 at 597–598:

> In the absence of any agreement to the contrary between himself and his principal, an agent is not entitled to avail himself of any advantage that his position may give him to profit at his employer's expense beyond the agreed compensation for his services. An agent is bound to a high degree of good faith toward his employer, and cannot, without the latter's consent, retain profits or earnings received in the course of performance of the employer's business or in an undertaking which constitutes a breach of duty to the employer . . . .

> Under the principles set forth above, an agent will be required to account to his principal for any secret profit which he may have received, or for any gift, gratuity, or benefit received by him in violation of his duty, *even though it does not appear that the principal has suffered any actual loss by fraud or otherwise.* (Italics added.)

See also 3 C.J.S. Agency § 271 at 31, § 274 at 43.

A case quite similar to the present one is Byer v. International Paper Co., 314 F.2d 831, 833 (10 Cir.). A lumberyard manager, by agreement with a contractor, received a portion of the profits on building projects on which the principal provided credit. Holding for the principal, the court stated:

> One who acts as agent for another is not permitted to deal in the subject matter of the agency for his own benefit without the consent of the principal. Profits realized by an agent in the execution of his agency belong to the principal in the absence of an agreement to the contrary. The agent is bound to a high degree of good faith toward his employer, and is not entitled to avail himself of any advantage that his position may give him to profit at the employer's expense beyond the terms of the employment agreement. *It is not necessary that the employer suffer actual loss before he is entitled to recover such ill gained profits from the employee or agent.* (Italics added.)

Another similar case is Laseter v. Sistrunk, 251 Miss. 92, 106, 168 So.2d 652, 657 ("Neither dishonesty nor corruption can be tolerated in such relations. No avenue must be left open for temptation in that direction. No refuge should be afforded for escape, if the agent happens to yield to temptation.").

Cloyd's argument in this appeal is that the company is not the real party in interest; the contractors are the ones who are out half of the discounts and profits. But Cloyd apparently misses the point of the agent's duty to pass back to the principal any gains that are made in the course of the employment. As the authorities state, it matters not that the principal actually sustains no *loss*; he is entitled to the *gain*. If the agent is able to get third persons to accept less or to pay more, and the agent can thus increase the profit, that profit belongs to the principal. Here the agent was able to get the contractors to provide their operations for less than normal, and the gain the agent thereby developed he had to pass back to the company.

Cloyd further argues that the company, if successful in the present suit, intends to distribute the recovery it obtains among the contractors from whom Cloyd extracted the payments. But that is none of Cloyd's affair. The company can keep the money or distribute it among the contractors or give it to charity; the company is nonetheless the real party in interest in this accounting suit against the disloyal agent.

We hold that Cloyd is required to account to the company for the payments he obtained. Our holding is in the nature of an interlocutory decree requiring the agent to account. We therefore direct the district court to conduct an accounting and then to render final decree for the balance found due, together with interest and costs. 1 Am.Jur.2d Accounts & Accounting §§ 62–63 at 436–438; 1 C.J.S. Accounting § 40 at 681, § 42 at 687.

Reversed and remanded.