933 F.2d 1001
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frederic GUSSIN and Paul Gussin, Individually, and as
co-partners, t/a Purace General Partnership,
Plaintiffs-Appellees,
v.
Richard W. SHOCKEY, Jr., Defendant-Appellant.
 No. 90-1402.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 7, 1991.
Decided May 21, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Paul V. Niemeyer, District Judge. (CA-88-3213-PN)
 Roy S. Lerman, Lerman & Steinberg, Washington, D.C., for appellant.
 Douglas R. Marvin, Maureen T. Cannon, Williams & Connolly, Washington, D.C., for appellees.
 D.Md., 725 F.Supp. 271.
 AFFIRMED.
 Before PHILLIPS and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Richard Shockey appeals from a summary judgment granted by the district court to plaintiffs Frederic Gussin, Paul Gussin, et al. (the Gussins), on their claim against Shockey for, inter alia, breach of fiduciary duty. The action arose out of business dealings between Shockey, an experienced and knowledgeable hand in the equestrian field, and the Gussins, who relied on Shockey's advice and as a result parted with much of their money (to the benefit of Shockey). Our review of the record[1] shows no genuine issue of material fact entitling Shockey to a trial, and we affirm.
 
 
 2
 * In late 1984 Shockey approached the Gussins and suggested that they invest in thoroughbred horses. He told them that since they knew little about horses, he would be their adviser. Shockey proposed that he be retained and compensated for such services. The Gussins and Shockey then agreed that Shockey's sole compensation would be a 5% commission based on the amount the Gussins gained when they eventually sold the horses Shockey recommended.
 
 
 3
 Over the next several months, pursuant to their agreement, Shockey brought a number of horses to the Gussins. Upon presenting the horses, Shockey told the Gussins that the horses were of good quality; in each instance, he also told the Gussins what a "fair price" was for the horse. In every instance, the price suggested by Shockey was the price the Gussins actually paid. The "fair price" paid by the Gussins, however, turned out to be inflated. For every horse purchased by the Gussins, the price Shockey quoted to them included a "commission" that the seller would pay to Shockey. Overall, the Gussins purchased seven horses using the advice of Shockey, and it is now conceded by Shockey that of the $2.7 million the Gussins paid for these horses at least $575,000 were direct "commissions," or kickbacks, to him.
 
 
 4
 The Gussins ultimately discovered this activity, quit dealing with Shockey, and filed a RICO, fraud, and breach of fiduciary duty claim seeking damages for all the kickbacks. After discovery, during which Shockey was most forthcoming in the details of his arrangements with the assorted sellers of horses, both parties filed for summary judgment. The district court, after holding a hearing, entered summary judgment in favor of plaintiffs for $575,000, which is the amount beyond question that Shockey received from the sellers. This timely appeal followed.
 
 II
 
 5
 Summary judgment shall be entered when it is "perfectly clear" that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir.1990). We apply this standard de novo, and ask whether the evidence, read in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Fed.R.Civ.P. 56. In the absence of a genuine issue, where there is no more than a scintilla of evidence supporting the nonmoving party, summary judgment must be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).
 
 
 6
 * The facts outlined above are not disputed. Along with those facts, we also note in the record evidence that Shockey repeatedly signed his name to insurance forms, boarding agreements, and the like--all the paperwork which follows on the heels of a horse purchase--as "Agent" for the Gussins. In addition, the record plainly states that Shockey did not tell the Gussins of his arrangement with the sellers of the horses, because he did not think it would be in his "best interest." Finally, Shockey acknowledged that the Gussins had placed their trust in him, and that he was supposed to "tell them what to do."
 
 
 7
 Based on this evidence, we think the record shows beyond dispute that Shockey was an agent. He contracted to be an agent for the Gussins. He acted as their agent in bringing them horses and advising them on the sales price. He also acted as their agent after the sales in arranging care for the horses. In every sense of the word, whether layman's or lawyer's, he was an agent.
 
 B
 
 8
 Having established that Shockey served as an agent for the Gussins, we turn to whether there has been a breach of the fiduciary duty that he undertook by becoming the Gussins' agent. Restatement (Second) of Agency Sec. 1(1) (1958) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") (emphasis added).
 
 
 9
 It is not contested that Shockey received at least $575,000 in "commissions" from those who sold horses to the Gussins. This violates the cardinal principles of agency. An agent owes a duty of "utmost loyalty" and fidelity to a principal, and that means, in practical terms, that an agent shall not put himself in a position where his own interests may conflict with the interests of the principal. King v. Bankerd, 492 A.2d 608, 613 (Md.1985). An agent breaches the fiduciary duty of agency when he takes advantage of his position as agent, Restatement (Second) of Agency Sec. 387, comment b (1958), or else when he advances his own interest to the detriment of the principal's interest. Id. Sec. 401. An agent can only take advantage of his position with the knowing consent of the principal, and this principle applies even in circumstances which ultimately benefit the principal. See, e.g., McGinnis v. Rogers, 279 A.2d 459, 470-71 (1971).
 
 
 10
 In this case, Shockey took actions counter to, and detrimental to, the interest of his principal and which inured to his benefit. He took these steps without the consent of the principal, and indeed never informed his principal of the arrangement. We are satisfied that this establishes a breach of fiduciary duty that is beyond dispute. Accordingly, the district court's judgment is affirmed.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Appellees filed a motion on April 13, 1990 to strike a portion of the appendix filed by Shockey, who was responsible for filing the appendix with the Court, Fed.R.App.P. 30(a). As appellees rightly contend, the appendix included material that was not properly there because it was not presented to the district court nor otherwise made a part of the record. Moreover, appellant included this material without consultation with opposing counsel, contrary to the procedures established in Rule 30(b)
 Appellees, however, fail in following the rules themselves. Local Rule 27(b) provides that "all motions shall contain a statement by counsel that counsel for the other parties to the appeal have been informed of the intended filing of the motion. The statement shall indicate whether the other parties consent to the granting of the motion, or intend to file responses in opposition." The sound policy behind this rule is to enlighten this court on the conflict, if any, surrounding a motion. Appellees' April 13, 1990 motion to strike is defective because it does not contain a Rule 27(b) statement.
 As a result, we order, on our own motion, that the offending portion, pages 182-95, be stricken from the appendix and considered no part of the record.