In re TRI–STAR TECHNOLOGIES
COMPANY, INCORPORATED,
Debtor.

Tali Tomsic, Chapter 7 Trustee,
Plaintiff in Counterclaim,

v.

Anthony F. Lautieri, Sr., Accelerated
Technologies, Inc., and Anthony F.
Lautieri, Jr., Defendants in Counter-
claim.

Bankruptcy No. 98–46124.
Adversary No. 98–4260.

United States Bankruptcy Court,
D. Massachusetts.

Jan. 24, 2001.

Bruce F. Smith, Steven C. Reingold, Jager, Smith & Stetler, Boston, MA, for Tali Tomsic, Chapter 7 Trustee.

James M. Bowers, Law Offices of James M. Bowers, Lawrence, MA, for Anthony F. Lautieri, Sr., Accelerated Technologies, Inc., and Anthony F. Lautieri, Jr.

### *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Remaining before the Court in this Adversary Proceeding are counterclaims by Tali Tomsic ("Trustee" or "Plaintiff"), as Chapter 7 trustee in bankruptcy of Tri-Star Technologies Company, Incorporated (the "Debtor") against Anthony F. Lautieri, Sr. ("Lautieri, Sr."), Accelerated Tech-

nologies, Inc. ("Accelerated") and Anthony F. Lautieri, Jr. ("Lautieri, Jr.") (collectively the "Defendants"). The Trustee's claims are based on account of Lautieri, Sr.'s alleged breach of fiduciary duty, breach of an implied covenant of good faith and fair dealing, deceit, and violation of Mass.Gen.L. ch. 93A; and the Defendants' alleged violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and civil conspiracy.

The following constitute this Court's findings of fact and conclusions of law, pursuant to Fed.R.Bankr.P. 7052.

### I. *FACTS AND PRIOR PROCEEDINGS*

In October of 1992, Michael Downes ("Downes"), Louis Pitocchelli, Lautieri, Sr., and Robert Perrault resolved to form a printed circuit board manufacturing business. Some or all were or had been employed by Wang Laboratories, Inc. ("Wang") and they believed they could fashion a profitable enterprise by purchasing Wang's circuit board facility in Methuen, Massachusetts. The investors formed a new company and entered into an initial Memorandum of Understanding, setting forth, inter alia, their respective ownership interests therein and in a real estate trust to be formed to purchase the underlying real estate (the "Real Estate Trust").[1] It was agreed that Downes would be sole stockholder, President, and Treasurer of this new company until the necessary financing was obtained and the acquisition completed with Wang. Once the acquisition was completed, the investors would acquire stock and interests in the new enterprise in the percentages set forth in their agreement. Lautieri, Sr.'s shares were described as being of those of his son Lautieri, Jr.[2]

---

**1.** The Memorandum of Understanding also set forth the investors' employment and minimum salaries and appointed Lautieri, Jr.'s company Accelerated, formerly a Wang's sales representative, to provide the Debtor with sales and marketing and technical assis-

tance and as the Debtor's primary manufacturing sales representative.

**2.** It was understood by all parties that Lautieri, Sr. wished his involvement in the Debtor to remain confidential on account of ongoing

The hoped for financing did not materialize. Apparently, institutional financiers were not comfortable with Lautieri involvement. Accordingly, on May 6, 1993, the parties entered into a Settlement Agreement terminating and rescinding the original Memorandum of Understanding. Some or all of Robert Perrault's capital contribution was returned and his involvement ended. A new corporation—now the Debtor—was formed. Downes was represented to be the sole principal of the new enterprise, and subsequently, in September of 1993, the financing went through and the Wang facility and Methuen real estate were purchased. Not unexpectedly, on October 1, 1993, the remaining investors entered into a new Memorandum of Understanding. Again, Mr. Downes was listed as the President, Treasurer and sole shareholder. But this time, the interests of the other investors were represented by their beneficial interests in the Real Estate Trust and so-called "entitlements" to a bonus pool, equity appreciation and "other benefits" associated with the Debtor company. The percentages were set as approximately fifty (50%) percent for Downes, fifteen (15%) percent for Louis Pitocchelli, and twenty-five (25%) percent for Lautieri, Jr. Ten (10%) percent was to be set aside for later distribution to other key employees. Again, Lautieri, Jr.'s interest was really that of his father.

Lautieri, Sr. acted as sales coordinator for the new company. His job was to supervise outside sales representatives, manage the account base, and provide technical assistance with respect to board fabrication and testing. As compensation, Lautieri, Sr. was to receive $100,000.00 a year,[3] plus health benefits, life insurance, and a car allowance. However, that compensation had an odd configuration. From October, 1993 through December, 1997,

Lautieri, Sr. received $3,000.00 per month directly from the Debtor and $5,333.33 per month through Accelerated, purportedly owned by Lautieri, Jr. At some point, the Debtor also began paying additional sums to Lautieri, Sr. through Upson Service Corp., an affiliated company. At Lautieri, Sr.'s request, all payments to him were reported to taxing authorities not as W–2 income, but as Form 1099 non-employee compensation.

Accelerated became one of the Debtor's independent sales representatives soon after the Debtor's formation. Accelerated and the Debtor entered into an Independently Contracted Sales Representative Printed Circuit Board Agreement on September 28, 1993. That agreement prohibited any payments from Accelerated to employees of the Debtor. From October 1993 to June 1997, the Debtor paid to Accelerated a total of $672,160.37 in commissions. It is undisputed that Lautieri, Jr., *unbeknownst to Downes*, turned over much of those commissions to his father.

Coincident with the appointment of Accelerated as the Debtor's sales representative, Lautieri, Sr. recommended to Downes that the Debtor contract with a company named Jeti, Inc. ("Jeti") for board testing services.[4] Soon thereafter, the Debtor began its business relationship with Jeti and, for approximately four years, the Debtor purchased from Jeti approximately nine hundred thousand ($900,000.00) dollars in testing services. However, again *unbeknownst to Downes*, Jeti had entered into a secret agreement with the Lautieris approximately a year after beginning its relationship with the Debtor. Pursuant to that agreement, Jeti paid to Accelerated approximately ten (10%) percent of the sales price of its services to the Debtor. It is stipulated that Accelerated received $89,247.18 in these payments. Lautieri,

---

**3.** In January of 1995, a pay raise brought Lautieri, Sr.'s salary to $148,000.00.

personal financial difficulties associated with Multicore, Inc., a failed enterprise in which he was a principal.

**4.** In the 1980's, Jeti provided board testing services for Lautieri, Sr.'s previous company, Multi–Core, Inc.

Jr. also turned over most of these payments to his father.

In or about June, 1997, Downes learned of the secret payments from Jeti to Accelerated. Angered, he terminated Accelerated and Lautieri, Sr. However, interestingly, the Debtor continued its relationship with Jeti after Downes exacted a five (5%) percent price reduction on Jeti's future services.[5]

Shortly thereafter, Lautieri, Sr. filed suit in state court against Downes, the Debtor, and the Real Estate Trust. In that suit, Lautieri, Sr. sought, inter alia, recognition of his alleged twenty five percent (25%) ownership interest in the Debtor (ironically after his earlier attempt to keep it hidden) and an injunction against any attempt by Downes to encumber, transfer, sell, assign, dissipate, or otherwise dispose of his interest in the Debtor.

On August 14, 1998, an involuntary Chapter 11 petition was filed against the Debtor. The Court entered the order for relief under Chapter 11, by consent, on August 21, 1998, but the Chapter 11 case was short-lived. The Debtor sought conversion to Chapter 7 on November 20, 1998.

Before the Chapter 7 conversion, the aforesaid state court action was removed to this Court, and the Debtor counterclaimed, alleging Lautieri, Sr.'s breach of fiduciary duty (Count I); breach of implied covenant of good faith and fair dealing (Count II); deceit (Count III); and violation of Mass.Gen.L. ch. 93A (Count IV). After conversion to Chapter 7, the Trustee was designated as the proper plaintiff.

The Trustee added counterclaims under the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c) and (d) (Count V & VI); and for common law civil conspiracy (Count VII). Accelerated and Lautieri, Jr. were also added by the Trustee as defendants with respect to the RICO and civil conspiracy counts.

At trial, Lautieri, Sr. voluntarily dismissed his claims against the Debtor, Downes, and the Real Estate Trust. Remaining only are the Trustee's counterclaims. They were fully tried before this Court and the decision taken under advisement.

## II. DISCUSSION

### A. Breach of Fiduciary Duty—Lautieri, Sr.

■ The Trustee argues that Lautieri, Sr. breached his fiduciary duty to the Debtor by accepting unauthorized commissions and kickbacks from Accelerated and Jeti. In order to resolve this question, the Court needs to first determine Lautieri, Sr.'s relationship to the Debtor. Lautieri, Sr. contends that he was only an independent contractor and that payments to him from the Debtor were only on account of his consulting services. However, Downes testified that Lautieri, Sr. acted, more or less, as the Debtor's executive vice president.

■ Based on the evidence presented, this Court finds that Lautieri, Sr. was one of the Debtor's key employees and not an independent contractor.[6] Lautieri, Sr. in-

---

5. John Levesque, Jeti's owner, testified that he agreed to the price reduction out of necessity because the Debtor was Jeti's largest customer.

6. The question of whether a worker is an "employee" or an "independent contractor" is generally analyzed under the common law of agency. *Speen v. Crown Clothing Corp.,* 102 F.3d 625, 631 (1st Cir.1996); *Nationwide Mutual Ins. Co. v. Darden,* 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); *Community for Creative Non–Violence v. Reid,*

490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). Massachusetts courts have used the Restatement (Second) of Agency § 220(2), which sets forth the following non-exhaustive list of factors relevant to determine whether a hired party is an employee:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

vested in the business,[7] had the opportunity to share in its profits, had a permanent office on the premises, was paid a base salary,[8] had real and apparent authority to bind the Debtor with respect to third parties, and was involved in all aspects of the Debtor's manufacturing business. The Debtor deposited in Lautieri, Sr. its trust and confidence and he was its fiduciary.

■ Lautieri, Sr. then argues that even if he had a fiduciary duty toward the Debtor, that duty was not breached when, unbeknownst to the Debtor, he shared in its commission payments to Accelerated or the payments from Jeti to Accelerated. This Court strongly disagrees.

■ Under Massachusetts law, employees occupying a position of trust and confidence owe to their employer a duty of loyalty and an obligation to act in good faith with respect to their employer's business. *Geller v. Allied–Lyons PLC*, 42 Mass.App.Ct. 120, 122, 674 N.E.2d 1334, 1336 (1997); *Orkin Exterminating Co. v. Rathje*, 72 F.3d 206, 207 (1st Cir.1995); *Meehan v. Shaughnessy*, 404 Mass. 419, 438, 535 N.E.2d 1255, 1265 (1989); *Chelsea Industries, Inc. v. Gaffney*, 389 Mass. 1, 11, 449 N.E.2d 320, 326 (1983) (citing to *Lindsay v. Swift*, 230 Mass. 407, 412, 119 N.E. 787, 789 (1918)). As a corporate fiduciary, Lautieri, Sr. was constrained to protect the interests of his employer and required to act solely for his employer's benefit in all matters within the scope of his employment. *Id.*; *C–E–I–R, Inc. v. Computer Dynamics Corp.*, 229 Md. 357, 366, 183 A.2d 374, 379 (1962) (cited in *Chelsea Industries*, 389 Mass. at 11, 449 N.E.2d at 326).

■ The breadth of an employee's fiduciary duty of loyalty reaches an assortment of prohibited conduct. It surely precludes such self-serving activities as accepting commissions and kickbacks from third parties without employer consent. *Cameco, Inc. v. Gedicke*, 157 N.J. 504, 522, 724 A.2d 783, 791 (1999); *Gussin v. Shockey*, 725 F.Supp. 271, 275 (D.Md. 1989), *aff'd*, 933 F.2d 1001, 1991 WL 82059 (4th Cir.1991). *See also Geller*, 42 Mass.App.Ct. at 123, 674 N.E.2d at 1337 (senior vice president breached his fiduciary duty by not disclosing alleged offer by prospective buyer to pay vice president a finder's fee); *Wormhoudt Lumber Co. of Ottumwa v. Cloyd*, 219 N.W.2d 543, 545 (Iowa 1974) (agent could not keep secret payments from third persons because of his "obligation to pass back to the principal any profits which the agent gleans."). *Cf. Compugraphic Corp. v. Golden (In re Golden)*, 54 B.R. 957 (Bankr.D.Mass.1985) (kickbacks received by debtor/employee in form of secret consulting job with one of employer's vendors are debts excepted from discharge on basis of fraud). An employee must disclose any interest which

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
(d) the skill required in the particular occupation;
(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
(f) the length of time for which the person is employed;
(g) the method of payment, whether by the time or by the job;
(h) whether or not the work is a part of the regular business of the employer;
(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.
*See Salmons v. Anthony Mfg. Co.*, 1998 WL 795056, *2–3 (Mass.Super. Nov.5, 1998); *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 630 (1st Cir.1996); *Commonwealth v. Savage*, 31 Mass.App.Ct. 714, 717, 583 N.E.2d 276, 278 (1991); *Chase v. Independent Practice Ass'n*, 31 Mass.App.Ct. 661, 665, 583 N.E.2d 251, 253–254 (1991).

**7.** Lautieri, Sr. even conceded that he owned 25% of the company when he sued in state court.

**8.** In fact, Lautieri, Sr.'s formal compensation was $148,000.00 as compared to Downes' CEO compensation of $165,000.00.

might cause the employee to act at the expense or detriment of his or her employer. *Jerlyn Yacht Sales, Inc. v. Wayne R. Roman Yacht Brokerage,* 950 F.2d 60, 65 (1st Cir.1991). *See also Geller,* 42 Mass.App.Ct. at 126, 674 N.E.2d at 1338 (the employee's disclosure cannot be half-hearted or partial, but the employer must be appraised of all material facts); *Gussin,* 725 F.Supp. at 275 (if an employee is to receive any benefit from a transaction, the employee must "fully disclose" any interest he has in the transaction and receive the consent of his principal to proceed, even if the principal ultimately was to benefit from the transaction).

Lautieri, Sr. failed to inform Downes that he was sharing in the commissions that the Debtor paid to Accelerated, that Accelerated was receiving payments from Jeti on account of the Debtor's purchases from Jeti, or that he was sharing in the benefits of those payments as well. Lautieri, Sr. therefore violated his fiduciary duty to the Debtor. He used his position within the company for his personal gain and compromised his duty of loyalty. He placed himself in a position wherein his own peculiar interests could have and may very well have prevented him from acting in the Debtor's best interest. *Geller,* 42 Mass.App.Ct. at 123, 674 N.E.2d at 1337; *United States v. Drumm,* 329 F.2d 109, 112 (1st Cir.1964).

■ Having concluded that Lautieri, Sr. was the Debtor's fiduciary and failed to meet his fiduciary obligations to the Debtor, the Court now turns to the appropriate remedy. It is well settled that an employer can recover from an employee any secret profit or benefit received as a result of business activities in conflict with the em-

ployee's duties to the employer. *Gussin,* 725 F.Supp. at 275; *Wormhoudt Lumber,* 219 N.W.2d at 545; *Drumm,* 329 F.2d at 113; *C-E-I-R, Inc.,* 229 Md. at 366, 183 A.2d at 379. Importantly, it is not necessary that the employer suffer actual loss or any measurable monetary damages as a condition to that recovery. *Wormhoudt Lumber,* 219 N.W.2d at 545–546; *Drumm,* 329 F.2d at 113. Accordingly, the Court agrees with the Trustee that Lautieri, Sr. should repay to the Debtor's estate the unauthorized commissions that he received from Accelerated—on account of commissions Accelerated received from the Debtor and payments Accelerated received from Jeti. The parties have stipulated that these total the sum of $275,246.00.

■ The Trustee also requests the forfeiture of salary or compensation paid to Lautieri, Sr. during the period in which he breached his fiduciary duty. Under the doctrine of equitable forfeiture, recognized in Massachusetts, an employee violating a fiduciary duty to an employer can be required to forfeit compensation owed by or already received from the employer.[9] *Boston Children's Heart Found., Inc. v. Nadal-Ginard,* 73 F.3d 429, 435 (1st Cir. 1996); *Orkin Exterminating Co.,* 72 F.3d at 207; *Meehan,* 404 Mass. at 440, 535 N.E.2d at 1266; *Chelsea Industries,* 389 Mass. at 13, 449 N.E.2d at 327. However, this remedy, also available even absent a showing of actual injury to the employer, *Boston Children's Heart Found.,* 73 F.3d at 435; *Chelsea Industries,* 389 Mass. at 13–14, 449 N.E.2d at 327, has been limited in Massachusetts cases only to that portion of compensation which exceeded the worth of the employee's services.[10] *Id.; Orkin*

9. Section 469 of the Restatement (Second) of Agency sets forth the general rule as follows: "[a]n agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned."

10. The employee has the burden to show that his work was worth the full amount paid by the employer. *Orkin Exterminating Co., Inc. v. Rathje,* 72 F.3d 206, 208 (1st Cir.1995); *Chelsea Industries, Inc. v. Gaffney,* 389 Mass. 1, 14, 449 N.E.2d 320, 327 (1983). Massachusetts courts have also in this connection examined the nature of the employee's conduct; that is, whether the employee's conduct was egregious. *Boston Children's Heart*

*Exterminating Co.,* 72 F.3d at 208; *Meehan,* 404 Mass. at 440, 535 N.E.2d at 1266; *Anderson Corp. v. Blanch,* 340 Mass. 43, 50, 162 N.E.2d 825, 830 (1959). This limitation stems from the premise that the forfeiture remedy is not a penalty but really reimbursement of payment for services not properly performed. *Lydia E. Pinkham Medicine Co. v. Gove,* 303 Mass. 1, 4, 20 N.E.2d 482, 486 (1939). Therefore, compensation is often apportioned in relation to the services indeed properly performed. *Id.; Anderson Corp.,* 340 Mass. at 50–51, 162 N.E.2d at 830; *Production Mach. Co. v. Howe,* 327 Mass. 372, 379, 99 N.E.2d 32, 36 (1951). And, for that reason, the extent of equitable forfeiture is left to the sound "discretion of the court with reference to the peculiar factors found to be present." *Anderson Corp.,* 340 Mass. at 50, 162 N.E.2d at 830; *Gove,* 303 Mass. at 4, 20 N.E.2d at 486. *See also Cain v. Cain,* 3 Mass.App.Ct. 467, 477–478, 334 N.E.2d 650, 657 (1975) (whether an employee's salary should be forfeited depends on the totality of the circumstances).

Here, there is no allegation that Lautieri, Sr. diverted time and energy from his responsibilities to Tri–Star, and the Trustee failed to demonstrate that the Debtor suffered any significant or specific financial loss as a result of Lautieri, Sr.'s breach of fiduciary duty.[11] The Trustee argues that the actions of Lautieri, Sr. might have caused Tri–Star to pay more for Jeti's services than it would have paid absent the Jeti payments to Accelerated. However, there is no evidence that, but for the Jeti payments to Accelerated, Jeti would have reduced the price of its services to the Debtor or that the Debtor could have obtained less expensive equivalent services elsewhere but for the influence of Lautieri, Sr. Downes testified that Jeti's prices were competitive with other test houses in the area and that he was satisfied with Jeti's services. Jeti provided services other test houses could not provide, such as automatic optical inspection, weekend access to the test equipment, and quicker turn-around times due to the proximity of the two facilities.

There is no evidence before this Court which would denigrate the value of the services that Lautieri, Sr. rendered to the Debtor, nor was it the testimony of Downes that his dismissal of Lautieri, Sr. had anything to do with the quality of his services to the Debtor. This Court finds that the value of Lautieri, Sr.'s services to the Debtor was more or less equivalent to his salary. *Compare Meehan,* 404 Mass. at 440, 535 N.E.2d at 1267 (the court found that the value of the services at issue equaled the compensation paid because the employees "worked as hard, and were as productive as they had always been."); *Walsh v. Atlantic Research Associates,* 321 Mass. 57, 66, 71 N.E.2d 580, 585 (1947) (disloyal employee did not have to forfeit over 75% of his compensation due to his disloyal conduct which was found to be a "practically harmless" act and where the employee's services were "wholly faithful and outstandingly successful.") *with Production Mach. Co.,* 327 Mass. at 379, 99 N.E.2d at 36 (total forfeiture of compensation where the record was sparse as to the benefits conferred by the defendant's services); *New England Inv. Corp. v. Sandler,* 329 Mass. 230, 237, 107 N.E.2d 16, 20 (1952) ("In view of the manner in which [corporate officer] managed the corporation for his personal benefit, he is not in a position to charge for possible incidental benefits which the corporation may have received from his management."); *Orkin Exterminating Co.,* 72 F.3d at 208–209 (forfeiture may be appropriate where defendant diverted "an appreciable amount

---

*Found. Inc. v. Nadal–Ginard,* 73 F.3d 429, 435 (1st Cir.1996) (citing to *Production Mach. Co. v. Howe,* 327 Mass. 372, 378, 99 N.E.2d 32, 36 (1951)). *But see* Restatement (Second) of Agency § 469, which, as noted *supra,* focuses on whether the conduct constituting the breach of the fiduciary duty of loyalty is "wilful and deliberate."

11. In fact, Tri–Star's sales volume substantially increased in 1994 and 1995.

of his time and energy" from the employer to a competing business owned and operated by him and his wife). Accordingly, forfeiture of Lautieri, Sr.'s compensation would be inequitable and inappropriate.

### B. *Breach of an Implied Covenant of Good Faith—Lautieri Sr.*

■ The Trustee also contends that Lautieri, Sr.'s actions breached his implied covenant of good faith and fair dealing with the Debtor. That covenant is implicit in all contracts made under Massachusetts law. It prohibits either party from doing anything to injure or destroy the right of the other to receive the fruits of the contract. *Blank v. Chelmsford Ob/Gyn, P.C.,* 420 Mass. 404, 407, 649 N.E.2d 1102, 1105 (1995) (citations omitted); *Shawmut Bank, N.A. v. Wayman,* 34 Mass.App.Ct. 20, 25, 606 N.E.2d 925, 928 (1993); *Fortune v. National Cash Register Co.,* 373 Mass. 96, 104, 364 N.E.2d 1251, 1257 (1977).

■ Although Massachusetts courts have implied a covenant of good faith and fair dealing in certain employment contracts, it has never been applied in the fashion sought here.[12] But more importantly, the theory is inapplicable under the facts here. The Court has already found that the Trustee has failed to demonstrate that the Debtor suffered an actual financial loss arising from Lautieri, Sr.'s actions.

### C. *Mass.Gen.L. ch. 93A—Lautieri, Sr.*

■ The Trustee adds a cause of action against Lautieri, Sr. under Mass.

Gen.L. ch. 93A, § 11.[13] This count must fail as a matter of law. It is premised on the possibility that the Court might find Lautieri, Sr. to be an independent contractor. But the Court has agreed with the Trustee that Lautieri, Sr. was the Debtor's employee. It is well settled that Chapter 93A, § 11 does not apply to employee-employer disputes or claims arising out of an employment relationship. *Informix, Inc. v. Rennell,* 41 Mass.App.Ct. 161, 162–163, 668 N.E.2d 1351, 1353 (1996); *Powderly v. Metrabyte Corp.,* 866 F.Supp. 39, 44 (D.Mass.1994); *Benoit v. Landry, Lyons & Whyte Co.,* 31 Mass.App.Ct. 948, 580 N.E.2d 1053 (1991); *Manning v. Zuckerman,* 388 Mass. 8, 11–12, 444 N.E.2d 1262, 1265 (1983). Disputes arising from an employment relationship are "principally 'private in nature' and do not occur in the ordinary 'conduct of any trade or commerce' as contemplated by the statute." *Informix, Inc.,* 41 Mass.App.Ct. at 163, 668 N.E.2d at 1353 (quoting *Manning,* 388 Mass. at 12, 444 N.E.2d at 1266).

### D. *Deceit and Civil Conspiracy—Lautieri, Sr., Lautieri, Jr. and Accelerated*

■ The Trustee also argues that she should recover against Lautieri, Sr. for his deceit. In order to establish a claim of deceit, the Trustee must prove that Lautieri, Sr. made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the Debtor to act thereon and that the Debtor both relied upon the representation and acted upon the representation to its damage.

---

12. The implied covenant has been implicated in situations where an employer has terminated an employee in order to deprive him of compensation already due for past services, *see Maddaloni v. Western Mass. Bus Lines, Inc.,* 386 Mass. 877, 438 N.E.2d 351 (1982); *Siles v. Travenol Laboratories, Inc.,* 13 Mass. App.Ct. 354, 433 N.E.2d 103 (1982); *Gram v. Liberty Mut. Ins. Co.,* 384 Mass. 659, 429 N.E.2d 21 (1981); *Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977), or where a claimant has demonstrated that an employer's reason for discharge was contrary to public policy and no other civil

remedy was available, *see Grubba v. Bay State Abrasives,* 803 F.2d 746 (1st Cir.1986).

13. Section 11 of Chapter 93A provides:

> Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment or by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two ... may ... bring an action ... for damages and such equitable relief....

*Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 935 (1st Cir.1985); *Barrett Associates, Inc. v. Aronson,* 346 Mass. 150, 152, 190 N.E.2d 867, 868 (1963). Silence can constitute a misrepresentation where the defendant fails to disclose information that he or she is bound to reveal. *Urman v. South Boston Sav. Bank,* 424 Mass. 165, 168, 674 N.E.2d 1078, 1081 (1997); *Jerlyn Yacht Sales, Inc. v. Wayne R. Roman Yacht Brokerage,* 950 F.2d 60, 69 (1st Cir. 1991). However, again, the Trustee failed to demonstrate that the Debtor was financially damaged by Lautieri, Sr.'s actions. Therefore, the Trustee cannot recover.

■■■■■■ For the same reasons, the Trustee's civil conspiracy claims against Lautieri, Sr., Lautieri, Jr. and Accelerated must fail. Massachusetts law recognizes two possible causes of actions that may be called "civil conspiracy." *Allandale Farm, Inc. v. Koch,* No. 97350, 1997 WL 1229248, *2 (Mass.Super. Nov. 3, 1997); *Aetna Cas. Sur. Co. v. P & B Autobody,* 43 F.3d 1546, 1563 (1st Cir.1994). The first form of civil conspiracy is coercive in nature, but quite limited in scope. *Id.; Milford Power Ltd. P'ship v. New England Power Co.,* 918 F.Supp. 471, 482 (D.Mass.1996). In order to prevail, the Trustee would be required to demonstrate that the Lautieris 1) acted in unison, and 2) possessed some peculiar power of coercion that they would not have enjoyed if they were acting independently. *Id.; Neustadt v. Employers Liab. Assur. Corp.,* 303 Mass. 321, 325, 21 N.E.2d 538, 541 (1939). Evidence of mere joint tortious activity is insufficient to prove this type of civil conspiracy. *Allandale Farm, Inc.,* 1997 WL 1229248 at *2; *Milford Power,* 918 F.Supp. at 482. Because the evidence fails to demonstrate any peculiar power of coercion by the Lautieris over the Debtor, there is no need for further analysis of this form of civil conspiracy.

■■■ A second recognized form of civil conspiracy is more integrated with a theory of common law joint liability in tort. *Allandale Farm, Inc.,* 1997 WL 1229248 at *3; *Aetna,* 43 F.3d at 1564. To state a claim based on this form of civil conspiracy, the Plaintiff must demonstrate 1) a common design or an agreement, express or implied, between two or more persons to do a wrongful act, and 2) proof of some tortious act in furtherance of the agreement. *Id.* The mere allegation that the Defendants conspired with respect to the Debtor, standing by itself, does not constitute grounds for relief. The Defendants' conduct must be tortious and they must have intended to harm or defraud the Debtor. *Allandale Farm, Inc.,* 1997 WL 1229248 at *3; *Payton v. Abbott Labs,* 512 F.Supp. 1031, 1035 (D.Mass.1981); *Neustadt,* 303 Mass. at 325, 21 N.E.2d at 540–541. However, inasmuch as the Trustee has failed to demonstrate that the actions of Lautieri, Sr., Lautieri, Jr. and Accelerated actually harmed the Debtor, there is no actionable tort on which to ground the Trustee's civil conspiracy claim.[14]

Plaintiff alleges that there was a scheme to defraud Tri–Star. To prove fraud as the underlying tort, the Trustee would have to show the same elements as previously discussed for deceit. Again, the record does not support this civil conspiracy claim and it should be dismissed for the same reason.

**E. RICO—Lautieri, Sr., Lautieri, Jr. and Accelerated**

Finally, the Trustee also asserts claims against Lautieri, Sr., Lautieri, Jr. and Accelerated under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). That statute, 18 U.S.C. §§ 1961–1968, provides for criminal sanctions and permits private plaintiffs to seek civil damages for violation of § 1962.[15] 18

**14.** For the same reason, the claim asserted by the Trustee against Accelerated—in the parties' Joint Pre–Trial Statement and at trial—for breach of contract must fail. Any such breach can not constitute a basis of recovery absent proof of damages.

**15.** *See* 18 U.S.C. §§ 1963 and 1964.

U.S.C. § 1962 prohibits any person from: (a) investing or using income received from a pattern of racketeering activity to acquire an interest in an enterprise; (b) acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity; (c) conducting or participating in the conduct of the affairs of an enterprise through a pattern of racketeering activity; or (d) conspiring to participate in any of these activities.[16] The Trustee asserts a substantive RICO claim pursuant to 18 U.S.C. § 1962(c) and a RICO conspiracy cause of action under 18 U.S.C. § 1962(d). Liability under § 1962(c) requires (1) the conduct (2) of an enterprise [17] (3) through a pattern (4) of racketeering activity. *Bessette v. Avco Fin. Services, Inc.*, 230 F.3d 439, 448 (1st Cir. 2000); *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 14–15 (1st cir. 2000), *petition for cert. filed*, (Dec. 29, 2000) (No. 00–1069); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

■ The Trustee must allege and prove that the Lautieris engaged in a "pattern of racketeering activity" or in at least two predicate acts of "racketeering activity." *Efron*, 223 F.3d at 15; *System*

*Mgmt., Inc. v. Loiselle*, 91 F.Supp.2d 401, 407 (D.Mass.2000); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir.1990). The predicate acts must be related and demonstrate a threat of continued criminal activity. *Id.* The term "racketeering activity" is defined under § 1961(1) of the RICO statute and includes the "predicate acts" of mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. *Efron*, 223 F.3d at 15; *McEvoy Travel Bureau, Inc.*, 904 F.2d at 788; *Digital Equipment Corp. v. Currie Enterprises*, 142 F.R.D. 16, 23 (D.Mass.1992). The Trustee claims that the Lautieris and Accelerated engaged in both mail fraud and wire fraud and added at trial their violation of Mass.Gen.L. ch. 271 § 39 (prohibiting bribery or gifts to influence business affairs).

■ In addition to specific instances of racketeering activity, there must be a casual nexus between the racketeering activity and the alleged injury, if any. The Trustee has standing to bring a civil RICO action if, and only if, the Debtor was injured by the conduct constituting the violation. *Efron*, 223 F.3d at 17; *Doyle*, 103 F.3d at 190. Plaintiff must show both "but-for" and proximate causation under

---

**16.** 18 U.S.C. § 1962 provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

**17.** It is the Plaintiff's contention that Accelerated was the enterprise through which the activities were carried out. However, the unlawful enterprise itself, however, cannot also be a RICO defendant. *Bessette v. Avco Fin. Services, Inc.*, 230 F.3d 439, 448 (1st Cir. 2000); *System Mgmt., Inc. v. Loiselle*, 91 F.Supp.2d 401, 415–416 (D.Mass.2000); *Trustees of Boston Univ. v. ASM Communications, Inc.*, 33 F.Supp.2d 66, 73–74 (D.Mass. 1998); *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996).

§ 1962(c). *System Mgmt. Inc.*, 91 F.Supp.2d at 416; *Camelio v. Am. Fed'n*, 137 F.3d 666, 670 (1st Cir.1998).

▉ As previously set forth, the Trustee has failed to carry her burden of proof with respect to at least the damage element. The record does not sufficiently reflect that the Debtor suffered monetary loss arising from the actions of the Lautieris. The Court has no option but to conclude that the bare requirements of a RICO claim under sections 1962(c) or (d) have not been met.

### III. *CONCLUSION*

For the foregoing reasons, the Court finds and rules that Lautieri, Sr. breached his fiduciary duty to the Debtor by accepting unauthorized commissions of $275,246.00 from Accelerated and Jeti. That breach supports the Trustee's recovery against Lautieri, Sr. for the fruits of that breach. However, inasmuch as the Trustee has failed to carry her burden of proof to demonstrate that the Debtor otherwise suffered a monetary loss arising from the said breach, her remaining claims against the Defendants must be dismissed.

A separate judgment shall enter in conformity herewith.